## STRINE v. WILLIAMS et al., Appellants.

### Division One, February 12, 1901.

1. **Deed of Trust:** EXTENSION OF NOTE: EXTINCTION. Where a new note is taken as payment of one secured by a deed of trust, it extinguishes the deed of trust. But if the new note is taken only as an extension of the debt evidenced by the mortgage note, then the debt is not paid, and the deed of trust can be foreclosed. And in this case it is held that the new note was given in payment of the old, and not for an extension of the time payment.

2. ———: PAYMENT OR EXTENSION: PRACTICE. Where the issue is sharp and direct in the trial court, as to whether a new note was given in payment of the one secured by a deed of trust or as an extension of that note, and there is sufficient evidence to sustain either contention, this court will not interfere.

3. ———: ———: JURISDICTION. *Held,* by VALLIANT, J., that, in this case, which is one to enjoin the foreclosure of a deed of trust securing a note for $85 on the theory that the note had been paid, this court has no jurisdiction of the appeal.

*Transferred from Kansas City Court of Appeals.*

CIRCUIT COURT JUDGMENT AFFIRMED.

*Callison & Hutchison* and *J. T. DeVorss* for appellants.

(1) Under the pleadings, the court erred in admitting the evidence offered by the plaintiff for the purpose of proving payment of the $85 note by the execution of the $101 note. Rider v. Culp, 68 Mo. App. 530; State ex rel. v. Deggs, 106 Mo. 160. (2) Even if the testimony was competent and admissible, the court erred in finding that the making of the $101 note was

payment of the $85 note, in the total absence of proof that there was an agreement or understanding between the parties that the former note was made and delivered and accepted in payment of the latter, and the absence of testimony clearly showing that it was the intention of the parties that payment was being thus made, or the $101 note was ever delivered to Williams or the $85 note was ever surrendered to Langford. State ex rel. v. Wagers, 47 Mo. App. 438; Bank v. Carson, 32 Mo. 196; Howard v. Jones, 33 Mo. 587; Thompson v. Kellogg, 23 Mo. 285; Montgomery County v. Auchley, 103 Mo. 502; Land Co. v. Rhodes, 540 Mo. App. 129; Shotwell v. Monroe, 42 Mo. App. 677; Hall v. Robinson, 50 Mo. App. 183.

*Wm. D. Hamilton* and *Boyd Dudley* for respondent.

(1) The owner of land may restrain a threatened sale of land under a deed of trust which is claimed to be in force, but which in point of fact has been satisfied; the payment of the note extinguishing a deed of trust given to secure it. Murphy v. Simpson, 42 Mo. App. 654; Brooks v. Owens, 112 Mo. 251; Ryan v. Gilliam, 75 Mo. 132; Parks v. Bank, 97 Mo. 130. (2) Anything is a payment which the creditor accepts as payment or for the purpose of extinguishing a debt due him. 18 Am. and Eng. Ency. of Law, 158; Block, Admr., v. Dorman, 51 Mo. 31. (3) The evidence shows that the $101 note was not only taken in payment and satisfaction of the $85 note, but that the $101 note was paid off, and as the case was tried without the intervention of a jury, every presumption will be made by this court in favor of the action of the trial court. Stone v. Pennock, 31 Mo. App. 544; Baum v. Fryrear, 85 Mo. 151. (4) The evidence shows that the $101 note was executed for the $85 note and was lost or taken by mistake, and before the defendant will be allowed to recover upon the

original note he must account for the substituted note.    Jackson v. Bowles, 67 Mo. 616.

MARSHALL, J.—This is a proceeding in equity to enjoin the foreclosure of a deed of trust on certain land in Daviess county, on the ground that the debt secured thereby has been paid.  The circuit court perpetually enjoined the foreclosure, and the defendants appealed to the Kansas City Court of Appeals and that court transferred the case to this court on the ground that it involved title to real estate.

In March, 1894, Clay C. Langford owned the land, and he executed the deed of trust to William C. Gillihan, trustee, to secure a note for $640 to Turner Langford, another note for $432.61 to Turner Langford, a note for $210 to Owen C. Edwards, and a note for $85 to Robert C. Williams, the last named note being dated February 20, 1892, and payable at one year, with eight per cent interest from date.

On January 29, 1896, Clay C. Langford, conveyed the land to the plaintiff, by a warranty deed.

Thereafter on the fourteenth of March, 1896, T. B. Yates, having become the owner of all the notes except that for $85 to Williams, and Langford having paid Yates all of the notes held by him, Yates released the deed of trust and satisfied it on the margin of the records.    The plaintiff claims that the Williams note was also paid.

Williams requested the trustee to foreclose the deed of trust to satisfy his $85 note, the trustee refused, and Williams procured the sheriff of the county, as the deed provided might be done in case the trustee refused to act, to act as trustee and advertise the land for sale.    Thereupon this suit was instituted with the result in the trial court above stated.

The sole question in the case tried in the circuit court and raised in this court is whether the Williams note is paid, both

parties conceding, as is the law, that if it was paid the deed of trust is *functus officio,* and hence can not legally be foreclosed.

The evidence adduced by the plaintiff showed that after this Williams note fell due, Langford and Williams had a settlement, and Williams figured out how they stood. Williams also held another note of Langford's for twenty odd dollars. Langford had furnished Williams two loads of hay and a dressed hog. Williams added the $85 note and the $20 note together, calculated the interest on them, gave Langford credit for the value of the hay and hog and it appeared that Langford owed him a balance of $101, and thereupon Williams made out a new note for that amount, and Langford executed it. Up to this point there is no conflict in the evidence. Langford took the $20 note and says he overlooked the $85 note which has remained in defendant's possession ever since. Langford says he never saw the $101 note until some time afterwards, and then when he sold his hogs he paid it and it was lost or destroyed. Williams says he never paid it all; that after Langford left he could not find the $101 note, and so he sent word to Langford, by his father, that he had taken the wrong note—meaning he had taken the $101 note instead of the $85 note—and he wanted him to come in and fix it up. Langford came in and denied that he had taken the $101 note, and Williams said he had not meant to charge him with having done so intentionally, and on the trial he would not say that Langford had taken it, but only that he could not find it, and therefore he thought Langford might have taken it by mistake. Langford says that the $101 note was agreed to be in payment and satisfaction of the $85 note and the $20, with interest, less the value of the hay and hog. Williams admits the transaction, but denies that it was to be in payment of those notes, and says that it was intended only as an extension of those notes. Whichever is the correct statement, it is

clear that Williams is not entitled to the possession of the $85 note, for under either state of affairs that note ought to have been turned over to Langford just as the $20 note was.

There is a legal difference, however, between the status of the parties as the one or the other is correct in his statement. If Williams took the $101 note as and for a payment of the $85 and $20 notes, then the deed of trust is paid, but if the $101 note was taken only as an extension of the debt evidenced by the $85 note (and of the $20 note), then the debt is not paid and the deed of trust can be foreclosed.

Langford's contention is supported by the testimony of Yates and Turner Langford. Yates says that after he released the deed of trust, he talked with Williams about how he could make his $85 note out of Langford, thinking that Langford still owed it to Williams, and Williams replied, "If I am put on the stand I will have to swear that that note has been paid." And when asked how it was paid, Williams said, "By the execution of another note in which that note was merged," and then explained the transaction as to the $101 note above stated. Turner Langford testifies to a conversation with Williams to the same effect. Williams does not deny having conversations with Yates and Turner Langford on the subject, but he says, "I told Mr. Yates I was afraid this" (meaning the $101 note) "was a payment, that I didn't know what the legal effect of that transaction was."

The preponderance of the evidence therefore is that Langford's contention and version of the transaction is the correct one, and that the note for $101 was taken in substitution for and payment of the notes for $85 and $20, with interest, less the payments represented by the hay and the hog.

The defendant argues, however, that it is improbable that Williams would have taken the $101 note, which was unsecured, even in part payment for the $85 note which was

secured.   On this bald statement this would appear very cogent reasoning.   But it appears from the record that Williams and Langford had been doing considerable business for several years.   Williams had held Langford's unsecured notes. Even at that time he held another of Langford's notes, for $140, which does not appear to have been secured in any way. Langford, even according to defendant's witnesses, had a good reputation for paying his debts and was solvent at that time. From 1894 to 1895, when this arrangement about these notes was made, the matter remained in this shape and Williams took no steps to assert any claim under the deed of trust, which had been released in March, 1896, as Williams knew at the time it was done, until after Langford failed in 1897, and until April, 1897, when Williams asked the trustee to foreclose the deed of trust which he knew had been released on the records for over a year.

The improbability relied upon by the defendant may therefore be fairly said to be offset by the character of the dealings of the parties, and the delay in attempting to enforce a deed of trust, which the defendant said to Yates and Turner Langford had been paid.

But aside from this, Langford swears that the $101 note was paid.   Williams denies that a cent of it was paid.   If it was paid it extinguished the debt, whether it was taken as a payment or an extension of the $85 note.   Whether it was paid or not is purely a question of fact.   The circuit court found it was paid.   Upon such a direct and sharp conflict in the evidence this court would not reverse the finding of the circuit court.

In either view of the case, therefore, there was sufficient evidence upon which the circuit court would be justified in finding as it did, and there is nothing appearing upon the cold face of the record which would warrant this court in interfering.

We have not overlooked defendant's contention that Langford "got mixed on his dates" as to when the $101 note was given, whether years before or after 1894, when the deed of trust was given, but we have attached no importance to that for the reason that the defendant himself testified that it was given in place of the $85 and $20 notes, and therefore the 'inaccuracies of Langford as to time are of no consequence in the case.

No reversible error being found otherwise in the record, the judgment of the circuit court is affirmed. All concur, except *Valliant, J.*, who holds that this court has no jurisdiction in this case.

### SEPARATE OPINION.

VALLIANT, J.—I am unable to distinguish this case from Gay v. Association, 149 Mo. 606; Bonner v. Lisenby, 157 Mo. 165; Vandergrif v. Brock, 158 Mo. 681, and other recent decisions of this court on the point of jurisdiction, and am therefore of the opinion that this court has no jurisdiction of this case, and that it should be transferred to the Kansas City Court of Appeals.