**CITY OF WACO v. BRANCH et ux.**
(No. 577.)

Court of Civil Appeals of Texas. Waco. May 30, 1928.

Rehearing Denied June 28, 1928.

1. **Municipal corporations ⬤747(2)—City held not exempt from liability for child's injuries in park because of employee's negligence, on ground that it maintained park in governmental capacity.**

City *held* not exempt from liability for injuries to child in park maintained by it because of its employee's negligence in discharge of duties incident to operation thereof on ground that it was acting in governmental, as distinguished from proprietary, capacity in maintaining and operating park.

2. **Automobiles ⬤308(10)—To justify peremptory charge for city, sued for injuries to occupant of automobile striking sheep running across park driveway, evidence must show, as matter of law, that appearance of dog frightened sheep, as claimed by herder, and was sole proximate cause of accident.**

To justify peremptory charge for defendant city, in action for injuries to child as result of automobile in which she was riding striking sheep running across park driveway, evidence must have showed, as matter of law, not only that appearance of dog frightened sheep, as claimed by herder, and constituted proximate cause of accident, but that it was sole proximate cause.

3. **Trial ⬤140(2)—Credibility and weight of testimony of city employee, charged with negligence causing injuries sued for, held for jury.**

In action against city for injuries to child, credibility and weight of testimony of city employee, charged with negligence causing accident, were questions for the jury.

4. **Trial ⬤143—Peremptory charge is improper, where there is any conflict or uncertainty in evidence.**

Where there is any conflict or uncertainty in the evidence, the giving of a peremptory charge is improper.

5. **Automobiles ⬤308(10)—Whether appearance of dog, frightening sheep struck by automobile in city park, was sole proximate cause of injuries to occupant, held for jury.**

Whether appearance of a dog, frightening sheep kept in park, maintained by defendant city, was sole proximate cause of injuries to child riding in automobile, which struck sheep running across driveway, *held* for jury.

6. **Evidence ⬤8—Necessity of reducing speed of or stopping automobile to avoid collision in meeting or passing herd of domestic animals is matter of common knowledge.**

It is a matter of common knowledge to every person of ordinary experience in driving automobiles on highways that it is necessary to re-

duce speed of car, and sometimes to stop it, to avoid collision in meeting or passing a herd of domestic animals.

7. **Evidence ⬤8—It is common knowledge that collision is practically inevitable, if herd of domestic animals suddenly runs across highway immediately in front of moving automobile.**

It is a matter of common knowledge to every person of ordinary experience in driving automobiles on highways that collision, with possibility of resulting injury, is practically inevitable, if herd of domestic animals suddenly and unexpectedly runs across highway immediately in front of car moving at even ordinary speed.

8. **Automobiles ⬤308(2)—Sheep herder's negligence held for jury, in action against city for injuries to occupant of automobile striking sheep running across park driveway.**

Whether a reasonably prudent person, exercising ordinary care for safety of persons driving on congested driveway in city park on holiday, would have taken sheep from their corral and across driveway, kept closer to them than 60 to 90 feet, and been more alert to discover approach of dog, which might frighten them into stampeding, *held* for jury, in action against city for injuries to child riding in automobile which struck sheep running across driveway.

9. **Automobiles ⬤308(2) — Whether city's herder could have prevented sheep from running across park driveway by ordinary care, and should have foreseen resulting injury to occupant of automobile, held for jury.**

Whether city employee, herding sheep kept in city park, could have prevented them from running across highway by exercise of ordinary care, and ought reasonably to have foreseen injury to child, riding in automobile which struck sheep, as probable result of any lack of care in such respect, *held* a question of fact for jury, in action against city for damages.

10. **Trial ⬤142—Existence of facts, which evidence tends to prove, and fact to be inferred therefrom, is always for jury on conflicting evidence, and ultimate deduction from undisputed facts may be jury question.**

Existence or nonexistence of facts, which evidence tends to prove, as well as of fact to be inferred therefrom, must always be left to determination of jury, where evidence is conflicting, and ultimate deduction from undisputed facts may also be a question for jury.

11. **Negligence ⬤61(1)—There may be two or more independent concurring proximate causes of accident.**

There may be two or more independent concurring proximate causes of one accident.

12. **Negligence ⬤56(10)—"Proximate cause" does not mean last cause, but such act wanting in ordinary care as was direct and existing cause.**

"Proximate cause" does not mean the last cause or the next act to the injury, but such

act wanting in ordinary care as actually aided in producing the injury as a direct and existing cause.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

**13. Negligence ⚖==61(1)—"Proximate cause" need not be sole cause, but must be concurring cause, which might reasonably have been contemplated as involving result.**

Proximate cause of injury need not be the sole cause, but must be a concurring cause, such as might reasonably have been contemplated as involving the result under the attending circumstances.

**14. Negligence ⚖==62(1)—New and independent cause, disconnected from original cause, may become direct and proximate cause of injury.**

A new and independent cause, disconnected from original cause operating in itself, may intervene to produce a certain result and break the chain of sequence, and become in itself a direct and proximate cause of injury.

**15. Negligence ⚖==62(1)—Intervention of irresponsible agency does not necessarily break causal connection between original negligence and injury, if such intervention and injury should reasonably have been anticipated.**

The intervention of an irresponsible agency does not necessarily break the causal connection between an original act of negligence and an injury directly resulting therefrom, if such intervention and resulting injury ought reasonably to have been anticipated.

**16. Automobiles ⚖==308(10)—Whether city was negligent in allowing sheep to run across park driveway, and such negligence was proximate cause of injuries to occupant of automobile striking them, held for jury.**

In action against city for injuries to child riding in automobile which struck sheep running across park driveway, evidence *held* to warrant submission of issues whether defendant was negligent in allowing sheep to run across driveway and to graze in park at time and place in question, and whether such negligence was proximate cause of injuries, as against contention that undisputed evidence showed that they were caused to run across driveway by a dog running in among them and frightening them.

**17. Automobiles ⚖==308(10) — Findings that city was guilty of negligence proximately causing injuries sued for in not having sheep running across park driveway confined at time of accident held sufficient to support judgment for plaintiff.**

In action against city for injuries to child, riding in automobile which struck sheep running across park driveway, findings that defendant was negligent in not having sheep confined at time of accident and that such negligence was proximate cause of injury were sufficient in themselves to support judgment for plaintiff.

Appeal from District Court, McLennan County; Giles P. Lester, Judge.

Action by A. L. Branch and wife, for themselves and as next friends for Mary Louise Branch, a minor, against the City of Waco. From a judgment for the minor plaintiff, defendant appeals. Affirmed. Conforming to answers to certified questions (5 S.W.[2d] 498).

John McGlasson, of Waco, for appellant.

Bryan & Maxwell, of Waco, for appellees.

GALLAGHER, C. J. This suit was instituted by appellees A. L. Branch and wife, Lulu Branch, for themselves and as next friends for Mary Louise Branch, their minor daughter, to recover of appellant, city of Waco, damages on account of personal injuries sustained by said minor while riding in a Ford car on one of the driveways of Cameron Park in Waco, Tex. The city of Waco owns, maintains, and operates said park. It is open to the general public as a driving place, for picnics, and for other purposes for which a public park is generally used. It is managed and controlled by and under direction of a board of park commissioners appointed by the city. As an incident to the care, maintenance, and operation of said park, the park commissioners kept therein a flock of sheep, twenty-six in number.

One of the main entrances to said park is an extension of Herring avenue eastward. This driveway begins at Fourth street, divides and encircles a knoll on which a tree is located, reunites, and continues eastward, and again divides, one drive leading to the right, and the other to the left, of said point of division. From the place where said driveway reunites after encircling the knoll and tree to said last-mentioned point of division, it is about 35 feet wide. The land on the south is some higher than the driveway, and there is a slight terrace along the south margin thereof. The land on the north is lower than the driveway, sloping to the pen where said sheep were kept, about 80 feet therefrom. Monday, July 5, 1926, was observed as a general holiday in Waco. A large crowd of people had assembled in this part of said park, and autos were parked on both sides of said driveway from the eastern point of division westward to where it divides and encircles said knoll and tree. There was just room between the parked autos for cars going in opposite directions to pass each other. Said driveway was greatly congested, and many cars were being driven thereon, one behind another, in each direction.

About 3 o'clock on that afternoon one of the employees of said park commissioners took said flock of sheep from the pen southward across said driveway, and was herding them on the lawn a short distance therefrom. Shortly thereafter appellee Mary Louise Branch was in a Ford coupé with her grandfather, who was driving same. He was driving said car westward from the eastern point of division of said driveway, and another car

was approaching from toward said knoll and tree, and, while his attention was directed to the matter of passing said approaching car in the narrow space between the lines of parked cars on either side, said flock of sheep ran rapidly across said driveway from the place where they had been grazing, northward toward the pen where they were kept, and one or more of them ran under, or were struck by, said Ford car driven by appellee's grandfather. The unexpected impact was of sufficient force to break his hold on the steering wheel, and cause his car to come in violent contact with one of the cars parked on the north side of said driveway. Appellee Mary Louise Branch was thrown violently against the windshield, and her face badly cut and lacerated; one cheek being cut entirely through into the mouth. At the time of the trial these cuts had healed, but one of the eyelids was drawn, and both cheeks were badly scarred. She was about five years old at the time of the accident.

Appellees' pleadings raised specifically the issues of negligence and proximate cause submitted to the jury. Appellant in its amended answer pleaded a general denial only, but in a trial amendment pleaded that, if any officer, agent, or employee of appellant herded or pastured sheep in said park, such action was not for the benefit of appellant, nor with the knowledge or consent of its governing body or of any one with authority to bind appellant, and that same was ultra vires. No other affirmative defense was pleaded. The evidence on the issues of negligence and proximate cause will be recited in connection with the discussion of the propositions relating thereto presented by appellant. The case was tried to a jury. At the close of the testimony, appellant requested the court to instruct the jury to return a verdict in its favor, which request was denied. In response to special issues submitted by the court, the jury found that appellant was negligent: (a) In allowing sheep to graze in the park at the time and place in question; (b) in not having said sheep confined at that particular time; and (c) in allowing said sheep to run across the driveway at that particular time, and that each of said negligent acts was a proximate cause of the injury sustained by said child. The jury further found that it would require the sum of $5,000 to compensate her for the injuries sustained by her in said accident. No issue of ultra vires was submitted by the court, nor did appellant request the submission of that issue or any other. The findings contained in said verdict are not directly assailed by any assignment of error. The court rendered judgment on said verdict in favor of appellee Mary Louise Branch against appellant, city of Waco, for the sum of $5,000, which judgment is here presented for review.

8 S.W.(2d)—18

Opinion.

[1] Appellant presents as ground for reversal a group of propositions asserting that appellant, in the maintenance and operation of said park, was acting in its governmental, as distinguished from its proprietary, capacity, and therefore not legally liable for damages resulting from negligent acts of its agents, servants, or employees. The evidence discloses that the negligence found by the jury was the negligence of a subordinate employee of the park commissioners while engaged in the discharge of duties incident to the care, maintenance, and operation of said park. Whether appellant was exempt from liability to appellee Mary Louise Branch for damages sustained by her as the proximate result of the negligence of its employee under the circumstances in this case, on the ground that it was at the time exercising through such employee a governmental, as distinguished from a proprietary, function, was presented to our Supreme Court for determination by certified question. That court answered that the maintenance of a park by a city is a proprietary function, exercised primarily for the peculiar advantage of the inhabitants of the municipality and that negligence imputable to such city with respect to the safety of those in lawful use of such park may furnish ground for liability for resulting injury. City of Waco v. Branch (Tex. Com. App.) 5 S.W. (2d) 498. Said several propositions are therefore all overruled.

Appellant by another proposition presents as ground for reversal the action of the court in refusing its request for a peremptory instruction. Appellant's sole contention in this connection is that the undisputed testimony shows that appellee suffered the injuries complained of upon a driveway in said park "as a result of a dog running into a flock of sheep grazing in said park, causing said sheep to become frightened and run across said driveway."

Mr. Shimming testified for appellant that he was superintendent of said park; that he was not in the park at the time of the accident; that the sheep were kept in the park as a matter of interest and attractiveness; that, when the sheep were taken out to graze, a herder went with them to look after them and guide them so they would not get into any trouble; that the herder on this occasion was Mr. Baker and that he was employed by the park commissioners.

Mr. Baker testified for appellant that he took the sheep out to graze about 3 o'clock on this particular afternoon; that he was herding them; that they were grazing about 200 feet south of the driveway; and that he was standing 60 or 90 feet from them. He further testified: "When the dog got into them, they made for the pen, and I went after them"; that he did not see the dog until he got close

to the sheep; that he tried to control the sheep and hold them at the place where they were, but when the dog came, he could not do anything with them. This witness on cross-examination, in answer to the question, "Why didn't you head them off?" said, "I didn't want to." He did testify, however, in this connection that he tried to stop them. This witness further testified: "Practically all dogs will chase sheep when they see them, and, as I said, there are some dogs in the park every day." No other witness testified to the presence of a dog anywhere in the vicinity of the sheep, though two other employees of the park commissioners testified that they saw a dog enter the park at Fourth street and Herring avenue more than a block away just before they heard the crash of the accident, and that the same dog returned to that point from the park just after such crash.

William Branch, who was driving the car in which appellee Mary Louise Branch was riding at the time of the accident, testified that, as he entered the driveway, he observed the sheep grazing up on the hill and drifting down toward said driveway; that there was a man behind them walking down the hill swinging a shillalah or stick in his hand; that witness was driving about 10 or 15 miles an hour, and looked up to pass an approaching car; that the sheep jumped under his car so suddenly that he had no chance to stop; that the shock threw the steering wheel out of his hand; that the sheep were running down the hill when they hit the car.

Miss Hulda Schneider, a witness for appellees, testified that she was at the park with a Sunday School picnic party; that she saw the accident, and was about 20 feet from it at the time; that she saw the sheep running; that she also saw a man driving them; that they were being driven from the bluff toward the pen; that she did not see the sheep under the car, but she saw them come out from under the car. She further testified as follows:

"The herder of the sheep was right nearby the place of the accident when I first saw him; he had gone up there to drive them down; I don't know how close he was; he was driving the sheep, was running the sheep, and he was back of the sheep. I don't know whether he had reached the left-hand side of that driveway at the time of the accident or not. About that time I was so interested in the little girl that I don't remember that. I saw him go there just before driving the sheep, but I don't know whether I saw him after the accident or not. He went up the bluff to get the sheep; he was chasing the sheep when I saw him. He must have been about 100 feet away from the driveway when I first saw him. He was then driving the sheep toward the pen."

[2] Before the trial court would have been justified in giving the peremptory charge requested by appellant, it was necessary that it should appear to him from the undisputed evidence, with such certainty that reasonable minds could not differ thereon, that a dog appeared where the sheep were grazing; that they were frightened by such dog; that such fright caused them to run toward their pen, across the driveway, in front of or under the car in which appellee Mary Louise Branch was riding; that appellant's herdsman Baker could not, by the exercise of ordinary care, have prevented their running across said driveway; that he could not have reasonably anticipated that a dog might appear on the scene and frighten said sheep; and that they might, as a result of such fright, escape from his control, run across the driveway, and thereby cause an accident to some car traveling thereon, in which accident the occupants thereof might be injured. In other words, before the court would have been justified in giving such peremptory charge, he must have believed that the evidence showed as a matter of law, not only that a dog appeared on the scene and frightened the sheep and caused them to stampede, and that the appearance of said dog thus constituted a proximate cause of the accident and resulting injury to appellee, but also that the appearance of such dog constituted the sole proximate cause thereof.

[3, 4] It cannot be said in a legal sense that the testimony of the witness Baker with reference to the appearance of the dog on the scene and the effect of his appearance was undisputed. No other witness testified to such facts. The witness Branch saw the sheep just before they began to run. He testified that he saw the herder coming on behind them with a stick in his hand; that he did not know whether the herder scared them or not. He said nothing in all his testimony about seeing a dog on the scene. Miss Schneider testified that she saw the herder go after the sheep; that she saw him drive them from the bluff toward the driveway and pen and that he was chasing them. Not only did she fail to testify to seeing a dog in that connection, but her affirmative testimony practically excludes the presence of such a factor on the scene. The witness Baker cannot be said to be a wholly disinterested witness. He was charged with being, by reason of his negligence, the cause of a tragic accident, in which the face of a little girl had been pitifully and permanently marred, for which accident his employer was sought to be held liable in damages. His credibility and the weight to be given to his testimony were questions for the jury. Appellant's theory that the appearance of the dog on the scene was the sole proximate cause of the accident and resulting injury is the only ground urged as a basis for demanding such peremptory charge. Where there is any conflict or uncertainty in the evidence, the giving of a peremptory charge is improper. The rule prescribed by our Su-

preme Court for determining whether such a charge should be given is clearly stated in Harpold v. Moss, 101 Tex. 540, 542, 109 S. W. 928, as follows:

"Harpold testified to the facts substantially as alleged in his petition. Upon the material facts he was flatly contradicted by the testimony of Moss and in some particulars by the testimony of other witnesses. It may be conceded also that Harpold's version of the transaction was not very probable. The error assigned is that the court erred in instructing a verdict. The rule that is applicable to this question is very clearly announced in the case of Eastham v. Hunter, 98 Tex. 560 [86 S. W. 323] in the following language: 'The plaintiffs in error having introduced sufficient evidence to support a verdict in their favor, were entitled to have the issue submitted, no matter how strong the contradictory evidence might be. In determining this question we must consider the evidence in its most favorable aspect for the plaintiffs in error, disregarding conflicts and contradiction; they raised the issue of credibility, which was a question for the jury.' To judge of the credibility of the witnesses and the weight to be given to their testimony is peculiarly the province of the jury. Hence whenever the court undertakes to say that the testimony of a witness is entitled to no credit because it is overborne by contradictory testimony or that it is so contrary to circumstances in proof which render it improbable, it very clearly assumes the function of the jury and its ruling should not be permitted to stand."

[5] The court did not err in refusing appellant's request for a peremptory charge on the ground that the undisputed evidence showed that a dog was the sole proximate cause of appellee's injuries. Stewart v. Miller (Tex. Civ. App.) 271 S. W. 311, 315 (writ refused), and authorities there cited; Burroughs v. Smith (Tex. Civ. App.) 294 S. W. 948, 950, 951 (writ refused), and authorities there cited; Richardson v. W. C. Bowman Lumber Co. (Tex. Civ. App.) 274 S. W. 349, 351, and authorities there cited.

[6-9] Even if it were established by undisputed and conclusive evidence that a dog did appear on the scene and frighten the sheep, it would not necessarily follow that such dog was the sole proximate cause of the accident, and that there was no negligence on the part of appellant's employees which might have been a concurring proximate cause thereof. It is a matter of common knowledge, possessed by every person who has had even ordinary experience in driving a car upon a highway, that in meeting or passing a herd of domestic animals it is necessary to reduce the speed of the car, and sometimes to stop the same, to avoid a collision with one or more of such animals. It is equally a matter of common knowledge, possessed by every such person, that, if a herd of domestic animals should suddenly and unexpectedly run across the highway immediately in front of a car moving at even ordinary speed, a collision, with the possibility of resulting injury, would be practically inevitable. There was affirmative testimony that sheep when frightened frequently stampede in a bunch. The testimony also showed without dispute that the pen or corral where these sheep were kept was just the other side of the driveway on which the accident occurred. Appellant's herder Baker testified that, practically every dog would chase a sheep if he saw one, and that a number of dogs were in the park every day.

The congested condition of the park at this particular place and of the driveway in question at this particular time has been heretofore briefly recited. Said driveway was lined on either side with parked cars with just room between them for moving cars to pass each other. There was a steady stream of cars one after the other moving in each direction through this narrow space. To any one exercising ordinary forethought, the sudden and unexpected stampede of a flock of twenty-six sheep across said driveway under such conditions would immediately suggest some kind of an accident to one or more of such moving cars, with the necessary possibility of injury to the occupants thereof. It seems that the witness Baker was vested by appellant with authority and discretion to determine when such sheep should be taken out of the corral to graze and to determine where they should be taken for that purpose, and that he was charged with the duty and responsibility of protecting and controlling them while they were so grazing. He took them out on this particular afternoon, notwithstanding the extreme congestion of the park by reason of the large number of holiday visitors congregated therein and traveling to and fro upon said driveway. He took said sheep to the most prominent place in the park, and on the other side of the principal driveway from their corral. While they were grazing, he was from 60 to 90 feet from them. He testified he did not see the approaching dog until it was as close to him as it was to the sheep.

[10] Upon this record, we think it was a question of fact to be determined by the jury from all the evidence whether a reasonably prudent person, exercising ordinary care for the safety of persons traveling said driveway, would have taken the sheep out of their corral on this particular afternoon under the conditions existing at the time; whether such a person, in the exercise of such care, would have taken them across the driveway to the particular place where they were grazing; and whether such person, in the exercise of such care, would have kept closer to the sheep, and would have been more alert to discover the approach of dogs which might frighten them. We also think that it was a question of fact whether appellant's herder Baker, by the exercise of ordinary care, could

have prevented the sheep from running across the driveway as they did, and whether he ought to have reasonably foreseen some such accident and injury as the probable result of any lack of care in these respects. In all cases the existence or nonexistence of the facts the evidence tends to prove, if there be conflict, as well as the existence or nonexistence of the fact to be inferred from other facts, must be left to the determination of the jury, and, though the facts are undisputed, ultimate deduction therefrom may be question for a jury. Stooksbury v. Swan, 85 Tex. 563, 573, 22 S. W. 963; Supreme Council v. Anderson, 61 Tex. 296, 301; Texas Life Ins. Co. v. Legg (Tex. Civ. App.) 229 S. W. 587, 588. The jury in this case in fact found that appellant, acting by and through its employee Baker, was guilty of negligence in each of the matters above discussed, and that each of such acts of negligence was the proximate cause of the injuries suffered by appellee. Such findings are not directly assailed by any assignment of errror.

[11-13] There may be two or more independent concurring proximate causes of one accident. If the approach of a dog was a proximate cause of the accident in this case, it does not necessarily follow that negligence, if any, on the part of appellant's herdsman was not a concurring proximate cause at all, but only a remote cause. "Proximate cause" does not mean the last cause or next act to the injury, but such act wanting in ordinary care as actually aided in producing the injury as a direct and existing cause. It need not be the sole cause, but it must be a concurring cause such as might reasonably have been contemplated as involving the result under the attending circumstances. Gonzales v. Galveston, 84 Tex. 3, 7, 19 S. W. 284, 31 Am. St. Rep. 17.

A similar issue was involved in the case of Railway v. McWhirter, 77 Tex. 356, 360, 14 S. W. 26, 19 Am. St. Rep. 755. In that case the railway company negligently permitted a turntable to remain unfastened and unguarded. The injured party, a child of tender years, tried to climb upon the turntable, when some of the other children playing there gave it a push, catching his leg between the turntable and the ties, and mashing it. The railway company claimed that it was not liable if the party pushing the turntable was of sufficient age and intelligence to know the danger of revolving the same, and to be responsible for his acts, and that in such case the negligence of the party pushing the turntable, and not its negligence in leaving it unfastened and unguarded, was the real cause of the injury. The Supreme Court, in passing upon such contention, said:

"Under the evidence and finding of the jury, it must be conceded that the negligence of appellant contributed to the injury; and, if it be conceded that the person who put the turntable in motion was sui juris, this would not relieve appellant from liability though another party might also be liable.

"If an accident occurs from two causes, both due to negligence of different persons, but together the efficient cause, then all the persons whose acts contribute to the accident are liable for an injury resulting, and the negligence of one furnishes no excuse for the negligence of the other [citing numerous authorities]."

In the case of Railway v. Mussette, 86 Tex. 718–720, 26 S. W. 1075, 1080 (24 L. R. A. 642), an engineer negligently left his engine, and, while he was gone, the fireman, who knew nothing of the working or mechanism of the engine, in some way put it in motion, resulting in an injury to one of the employees of the company. The court held that it was a question for the jury whether the negligence of the engineer was the proximate cause of the injury resulting from the starting of the engine. We quote from the opinion in that case as follows:

" 'The act of a third person intervening and contributing a condition necessary to the injurious effect of the original negligence will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not on the number of subsequent events and agencies which might arise. Whether in any given case the act charged was negligent, and whether the injury suffered was, within the relation of cause and effect, legally attributable to it, are questions for the jury.' Lane v. Atlantic Works, 111 Mass. 139; Gonzales v. City of Galveston, 84 Tex. 3 [19 S. W. 284, 31 Am. St. Rep. 17]; Jones v. George, 61 Tex. 346 [48 Am. Rep. 280]; Railway v. McKinsey, 78 Tex. 298 [14 S. W. 645, 22 Am. St. Rep. 54]; Weick v. Lander, 75 Ill. 93. * * * Whether it ought to have been foreseen that an ignorant fireman might intentionally or inadvertently put it in motion, when under steam and situated as was it, if he left the post assigned to him by his employer, was a question for the jury."

In the case of Shippers' Compress & Warehouse Co. v. Davidson, 35 Tex. Civ. App. 558, 80 S. W. 1032, 1033, 1035 (writ refused), the same rule was applied, and numerous authorities cited and quoted. In each of the cases above cited, the original negligence was held to be such a proximate cause of the accident as to render the party responsible therefor liable in damages for the injuries resulting therefrom, notwithstanding the original negligence alone would not have caused such accident without the intervention of the subsequent independent act of a third person, which contributed a condition necessary to give the original negligence an injurious effect.

[14] A new and independent cause disconnected from the original cause operating in itself may intervene to produce a certain result and break the chain of sequence, and be-

come in itself the direct and proximate cause of an injury. The rule on this subject is expressed in Shippers' Compress & Warehouse Co. v. Davidson, 35 Tex. Civ. App. 558, 560, 80 S. W. 1032, 1033 (writ refused), as follows:

"Intervening agencies sometimes interrupt the current of responsible connection between negligent acts and injuries, but, as a rule, these agencies, in order to accomplish such result, must entirely supersede the original culpable act, and be in themselves responsible for the injury, and must be of such a character that they could not have been foreseen or anticipated by the wrongdoer. If it required both agencies to produce the result, or if both contributed thereto as concurrent forces, the presence and assistance of one will not exculpate the other, because it would still be the efficient cause of the injury."

[15] The acts of appellant's herdsman set the stage, as it were, for this tragic accident. The intervention of the subsequent independent act of an irresponsible dog merely contributed a condition necessary to give the original negligence, if any, of appellant's herdsman, an injurious effect. It did not necessarily entirely supersede such negligence and become in itself solely responsible for the accident, nor was it, under the evidence in this case, necessarily of such a character that it could not have been foreseen or anticipated by such herdsman. The intervention of an irresponsible agency does not necessarily break the causal connection between an original act of negligence and an injury which is the direct result thereof, if such intervention and resulting injury ought reasonably to have been anticipated. Our Supreme Court, in Railway v. McWhirter, supra, p. 360 (14 S. W. 27), speaking of negligence in leaving a turntable unfastened, said:

"If a railway company should leave its turntable unfastened, or so slightly fastened that children not sui juris can unfasten it and use it, then it should be held liable for an injury resulting from its use by such persons; for, on account of their want of intelligence, the negligence of the company must be deemed the proximate cause of the injury."

See, also, in this connection, Wichita Falls Traction Co. v. Hibbs (Tex. Civ. App.) 211 S. W. 287, 288; U. S. Natural Gas Co. v. Hicks, 134 Ky. 12, 119 S. W. 166, 167, 168, 23 L. R. A. (N. S.) 249, 135 Am. St. Rep. 407; Iamurri v. Saginaw City Gas Co., 148 Mich. 27, 111 N. W. 884, 886, 887; Harriman v. Pittsburgh, C. St. L. R. Co., 45 Ohio St. 11, 12 N. E. 451, 460, 462, 4 Am. St. Rep. 507; Moore v. Jefferson City Light, Heat & Power Co., 163 Mo. App. 266, 146 S. W. 825, 827, par. 3. For the additional reasons hereinbefore discussed, the court did not err in refusing said requested peremptory charge. See, in addition to the authorities hereinbefore cited. Exporters' & Traders' Compress & Warehouse Co. v. Hemphill (Tex. Civ. App.) 292 S. W. 599, 600, 601, pars. 1 and 2, and 5 and 6 (writ dismissed), and authorities there cited.

[16] Appellant presents a proposition complaining of the action of the court in submitting over its objection to the jury for determination from the evidence the following issue:

"Was the defendant negligent in allowing the sheep to run across the driveway at the time and place in question, if it did allow them to run across the driveway?"

The jury answered said issue, "Yes." The only contention urged in said proposition is that "the undisputed evidence showed that the sheep were caused to run across the driveway by a dog running in among the sheep and frightening them." Appellees, among other grounds of negligence charged against appellant in their petition, alleged that it was negligent in driving said sheep across said driveway and in permitting them to run across the same at that particular time. The evidence of appellees' witnesses Branch and Miss Schneider as above recited raised the issue of the negligence of the herder in driving and chasing said sheep across said driveway, and contradicted the evidence of appellant's witness Baker that said sheep were caused to run across said driveway because a dog appeared and frightened them. Appellant made no objection to the form in which such issue was submitted, nor did it request the submission of any issue whatever presenting its theory that said sheep were frightened and caused to run across said driveway by the appearance of a dog. Said proposition is overruled.

Appellant presents a proposition complaining of the action of the court in submitting over its objection to the jury for determination from the evidence the following issues:

"(1) Was the defendant negligent in allowing the sheep to graze in the park at the time and place in question?

"(2) Was such negligence, if any, the proximate cause of plaintiff's injuries, if any?"

[17] The jury answered each of said issues, "Yes." The only contention urged in said proposition is that "the undisputed evidence shows that the injury was caused by reason of a dog running in among the sheep, causing them to become frightened and run across the driveway." For the reasons hereinbefore stated said proposition is overruled. We deem it proper, however, to state in this connection that the court also submitted the following issues:

"(3) Was the defendant negligent in not having the sheep confined at the time of the alleged accident on July 5, 1926?

"(4) Was such negligence, if any, the proximate cause of plaintiff's injury, if any?"

The jury answered each of said issues, "Yes." Appellant made no objection whatever to the submission of said issues, and did not assail the findings of the jury thereon in its motion for new trial. Neither is

there any proposition directly attacking the same presented by appellant in its brief. Said findings are sufficient in themselves to support the judgment of the court awarding appellee a recovery of the damages assessed in her favor by the jury.

The other propositions presented by appellant are not such as authorize a reversal of the judgment appealed from, and the same is therefore affirmed.