**BOYLE et al. v. PURE OIL CO. et al.**
**(No. 764.)**

Court of Civil Appeals of Texas. Waco.
March 7, 1929.

Rehearing Denied April 11, 1929.

Shartel & Gilliland, of Oklahoma City, Okl., for appellants.

Vinson, Elkins, Sweeton & Weems, of Houston, and C. S. Bradley, of Groesbeck, for appellees.

BARCUS, J. Appellants instituted this suit against appellees to recover damages which they claimed to have suffered by reason of appellees having polluted the water used by them in the manufacture of ice in the city of Groesbeck. The trial court sustained a general demurrer to appellants' petition. The only question, therefore, for determination, is whether, as against a general demurrer, appellants' petition stated a cause of action.

Appellants alleged:

"That from January 1st, 1925, up to and including December 31, 1925, they owned and operated a manufactory and plant located in the town of Groesbeck in Limestone county, Texas, for the manufacture of ice for sale, and was during said time and for a long time prior thereto engaged in the manufacture and sale of ice at said point. That the city of Groesbeck had a waterworks system and had its reservoirs located in and near the Navasota river, and which said river, prior to the injuries hereinafter set forth, furnished a supply of pure fresh spring water which was suitable for and could be used in the manufacture of ice for commercial purposes and for use by the citizens of Groesbeck, Texas, and persons trading in and at said city. That by reason of the city of Groesbeck being able to furnish a supply of pure fresh spring water to these plaintiffs for the manufacture of ice, and which the said city of Groesbeck contracted to furnish these plaintiffs and did furnish these plaintiffs until the wrongs and injuries hereinafter complained of were committed by defendants, plaintiffs were induced to expend a large sum of money in the purchase, erection, construction and establishment of an ice factory in the said city of Groesbeck at a large expense, which they would not have done had it not been that said city of Groesbeck by the construction and operation of its waterworks plant was able to furnish plaintiff an abundant supply of pure fresh spring water suitable for the manufacture of ice for commercial and other purposes. Plaintiffs would show that the said city of Groesbeck at a heavy expense of laying pipe lines from said city to said Navasota river, the maintenance of reservoirs and dams in and near said river, thus impounding the waters of said river by and through said reservoirs and dams and water mains, had made said waters available to the citizens of Groesbeck for drinking and commercial purposes and enabled said city to furnish manufacturers, and especially manufacturers of ice with pure fresh spring water, and said city had been engaged in doing so for a long time prior to the injuries herein complained of, and could have and would have continued to do so but for the wrongs and injuries committed by defendants as herein set forth.

"Plaintiffs would show unto the court that after it had established its ice factory at Groesbeck and had been engaged in the manufacture and sale of ice from said pure spring water, for a long period of time, the defendants on or about the 1st day of January, 1925, and prior thereto, began to empty into said river and the tributaries of said river large quantities of salt water, waste oil and bottom sediments produced from oil wells operated by said defendants, and by such acts polluted the waters of said river, the waters of the springs emptying into said river, the waters of the reservoir belonging to said city of Groesbeck, and rendered said waters wholly unfit for use in the manufacture of ice, and thus deprived plaintiffs of a water supply for the manufacture of ice, that they had theretofore been using in the manufacture of ice."

Appellants further alleged:

"Plaintiffs would show unto the court that by drainage, flow and otherwise the waters of said stream and reservoir would clear up at times and become suitable apparently for use in freezing ice, and while plaintiffs would be so using said waters the defendants would empty into said stream and into the tributaries of said stream large quantities of salty water, waste oil and bottom sediment and render said waters wholly unsuitable while said ice was being manufactured and rendered the whole output unfit for use for any purpose."

They further alleged:

"That both said defendants well knew that in the production of said oil from said wells there would be brought to the surface large quantities of salt water and bottom sediments, and in the production of said oil there would be large quantities of waste oil allowed to escape on said lands, and said defendants, knowing said facts, built inadequate reservoirs on the slopes of said lands to temporarily retain said salt water, bottom sediments and waste oil, well knowing that said reservoirs were inadequate to hold the salt water so produced in said quantities, and would allow said salt salt water, waste oil and bottom sediments to escape in large quantities and flow into Jacks creek, a tributary of the Navasota river and into the Navasota river and pollute the waters of said stream and the waters of the reservoir of the Groesbeck water system. That defendant

Pure Oil Company, with knowledge that its field manager was thus polluting said streams and waters, retained him in control and management of the production department, and said defendant Jones, with a knowledge that he was thus polluting the waters of said streams and Groesbeck water system, willfully and wantonly continued to produce said salt water along with the oil, and permit said salt water and waste oil to escape and flow into said streams and pollute the waters thereof and render same unfit for the production of ice."

Appellants pleaded in detail the items of damage which they claimed to have suffered as the direct and proximate cause of the pollution of said water by appellees.

Appellees' contention, which the trial court adopted, is that they were not liable for the damage suffered by appellants in the use of the polluted water, their contention being that the direct and proximate cause of said injury was the breach on the part of the city of its contract to furnish appellants with water suitable for the manufacture of ice, and, this being true, the party who polluted the water could not in any way be held liable for the damages suffered by the user of the polluted water. We cannot agree with this theory. Article 697 of the Penal Code provides:

"Whoever shall in any wise pollute or obstruct any water course, lake, pond, marsh, or common sewer, or continue such pollution or obstruction so as to render the same unwholesome or offensive to the inhabitants of the county, city, town or neighborhood thereabout, shall be fined not exceeding five hundred dollars."

Article 698 provides:

"It shall be unlawful for any person, firm, or corporation, private or municipal to pollute any water course or other public body of water, by throwing, casting or depositing, or causing to be thrown, cast or deposited any crude petroleum, oil or other like substance therein, or to pollute any water course, or other public body of water, from which water is taken for the use of farm live stock, drinking and domestic purposes."

The general rule laid down in 17 C. J. 741, is that—

"A wrongdoer is responsible for the natural and probable consequences of his wrongful act or omission, and this rule applies both in contract and in tort. Natural consequences are such as might reasonably have been foreseen, such as occur in an ordinary state of things."

Our courts hold that any damages that might reasonably be expected to and which do flow from an act committed by a party which interferes with the legal rights of another person, are actionable. Galveston, H. & S. A. Ry. Co. v. Powers, 101 Tex. 161, 105 S. W. 491; Democrat Publishing Co. v. Jones, 83 Tex. 302, 18 S. W. 652; C., R. I.

& G. Ry. Co. v. Word (Tex. Civ. App.) 158 S. W. 561. The cardinal rule with reference to who is responsible for damages is governed by what is recognized as the rule of the proximate cause, which has been variously stated, but which may be summed up as given in 17 C. J. 734, as follows:

"An act or omission is the proximate cause of a loss where there is no intervening, independent, culpable and controlling cause, or, in other words, where there is an unbroken connection between the act and the damage."

Our courts uniformly hold that the person who commits the first wrongful act which directly caused the damage or injury is responsible, although there may be a subsequent intervening cause that makes another person equally liable. G., C. & S. F. Ry. Co. v. McWhirter, 77 Tex. 356, 14 S. W. 26, 19 Am. St. Rep. 755; City of Waco v. Branch (Tex. Civ. App.) 8 S.W.(2d) 271, and authorities there cited. In the case of G., C. & S. F. Ry. Co. v. McWhirter, supra, the Supreme Court used this language:

"If an accident occurs from two causes, both due to negligence of different persons, but together the efficient cause, then all the persons whose acts contribute to the accident are liable for an injury resulting, and the negligence of one furnishes no excuse for the negligence of the other."

And in support thereof it cites a large array of authorities. It was held that a party who permits oil fumes to go into the city sewer and escape therefrom and thereby injure a bakershop, was responsible for the bread that the oil fumes destroyed. Brady v. Detroit Steel & Spring Co., 102 Mich. 277, 60 N. W. 687, 26 L. R. A. 175. It was held that the owner of a hide house was responsible for sickness caused thereby in the neighborhood. A. Cohen & Co. v. Rittimann (Tex. Civ. App.) 139 S. W. 59. It was held that an oil company which suffered oil to percolate in the ground and thereby contaminate waters under the ground which flowed into a neighbor's well, was liable for damages occasioned thereby. Texas Co. v. Giddings (Tex. Civ. App.) 148 S. W. 1142; Kinnaird v. Standard Oil Co., 89 Ky. 468, 12 S. W. 937, 7 L. R. A. 451, 25 Am. St. Rep. 545; Texas Co. v. Earles (Tex. Civ. App.) 164 S. W. 28; Ft. Worth & R. G. Ry. Co. v. Hancock (Tex. Civ. App.) 286 S. W. 335. It was held that a company which left an explosive at a well, and a man not connected with said company took the explosive and hid same in a graveyard, and two years thereafter a child was injured while playing with said explosive, was liable. Clark v. E. I. Du Pont de Nemours Powder Co., 94 Kan. 268, 146 P. 320, L. R. A. 1915E, 479, Ann. Cas. 1917B, 340. It was held that a party who stored dynamite in a house in a city, in violation of a city ordinance, and a fire broke out, which burned the house and caused the dynamite to explode and kill a

fireman while he was fighting the fire, was liable for damages occasioned by the fireman's death. Pinson v. Young, 100 Kan. 452, 164 P. 1102, L. R. A. 1917F, 621. It was held that a wholesale druggist who put belladonna, a very poisonous drug, in a bottle and branded the same "dandelion," a harmless drug, was liable to the user thereof who purchased same from a remote druggist. Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455.

From the above array of authorities, it appears the general rule is well established that, where a party puts in motion a dangerous substance or object, which is the direct and proximate cause of an injury, he is liable for the damages which might reasonably have been foreseen and which were occasioned thereby, regardless of any other influences or persons who may have handled the injurious substance or object after it started on its damaging career. In the instant case, the mere fact that appellants had a contract with the city of Groesbeck to furnish them water suitable for making ice did not relieve appellees of the damages caused by their acts of negligence in willfully and wantonly putting into said water supply such pollution and chemicals as would injure the machinery of appellants, and make unfit for use the ice actually being manufactured by them. If the city had breached its contract and refused to furnish any water, appellants would not have suffered any injury to their machinery; neither would the ice they manufactured have been unfit for use. The pollution of the water by appellees was the original direct proximate cause of the damages, and but for said act the damages would not have occurred. Further, the act of appellees was in direct violation of the criminal statutes of this state.

To say that appellees could, in violation of the statutes, willfully, wantonly, and deliberately pollute said waters, and thereby destroy the property of appellants, and not be responsible to appellants for the damages occasioned thereby, would require us to hold, contrary to the well-established rule of law, that a party guilty of a deliberate wrong is responsible for such damages as might reasonably have been foreseen and were proximately occasioned thereby. We do not think as a matter of law it could be said that the breach of contract by the city, whereby it was to furnish appellants water suitable for the manufacture of ice, was the direct and proximate cause of the injuries suffered by appellants in the loss of ice and the damage done their manufacturing plant by reason of the water being polluted by appellees. The initial, primary and proximate cause of said injury was the illegal act on the part of appellees in polluting the water used by appellants. We do not think it would be either a sound or just policy to hold that a party could willfully and wantonly pollute a stream, in violation of the criminal statutes, and then escape liability for the damages actually done and which might reasonably have been foreseen and which are directly and proximately caused by reason of such pollution.

We are of the opinion that the trial court was in error in sustaining the general demurrer, and by reason thereof the judgment of the trial court is reversed, and the cause remanded.

STANFORD, J. Not being able to agree with my associates, I hereby file the following dissenting opinion:

The statement of the pleadings as made in the majority opinion is correct. The material facts alleged, briefly, are, in effect, that appellants had a contract with the city of Groesbeck to furnish them pure water with which to manufacture ice, and that said city was caused to breach that contract by reason of the wrongful conduct of appellees in polluting the city's water supply. As a consequence thereof appellants claimed damages in the following particulars:

(a) That by reason of the city, by the construction and operation of its waterworks plant, being able to and agreeing to furnish them an abundant supply of pure water, appellants were induced to establish and maintain their ice factory at Groesbeck.

(b) In order to minimize their damages, appellants caused the water to be analyzed, and purchased water elsewhere.

(c) Appellants paid freight on ice and material purchased by them.

(d) They purchased extra equipment.

(e) They paid for extra labor.

(f) They had to purchase ice.

(g) They paid extra rent.

(h) *They paid the city for unsuitable water*, etc.

Were the facts stated sufficient to constitute a cause of action against appellees? If not, then the demurrer was properly sustained. It will be observed from the allegations of appellants' petition that the city of Groesbeck owned the water reservoirs and the supply of water therein contained claimed to have been polluted by appellees. Appellants alleged:

"At a heavy expense of laying pipe lines from said city to said Navasota river, the maintenance of reservoirs and dams in and near said river, thus impounding the waters of said river by and through said reservoirs and dams and water mains, had made said waters available to the citizens of Groesbeck for drinking and commercial purposes and enabled said *city to furnish* manufacturers, and especially manufacturers of ice, with pure fresh spring water," etc.

As soon as the waters of said river became impounded by the city by means of reservoirs and dams, it ceased to belong to the public

and became the private property of the city, and the city, through its mains furnished said water, its private property, to appellants and its other customers. The polluted water of which appellants complain was the city's water, and it is thought it is immaterial whether said water became polluted before or after it was impounded and became the private property of the city. In either event, it was the duty of the city to "purify, clean or sanatize said water." Article 4595½c, Vernon's Sayles' Second Supplement (1922); also article 699, Penal Code, Rev. Criminal Statutes 1925. It will also be observed from said allegations that the city of Groesbeck by contract had obligated itself to furnish appellants an abundant supply of pure fresh water, suitable for appellants' purpose in manufacturing ice for commercial purposes, and that it was this promise and obligation on the part of said city that induced appellants to establish and operate its ice plant in said city of Groesbeck. It is also clear from appellants' said allegations that the city of Groesbeck breached its contract with appellants to furnish them said pure wholesome water, and that such breach was the immediate, direct, proximate cause of appellants' alleged damages. Such duty and obligation upon the part of the city arose, not only out of its contract with appellants, but also by reason of statutory obligations then enjoined upon said city, as above stated.

If appellants had been getting water directly out of the Navasota river, with no contract relation between themselves and the city, or any one else, whereby they were to be supplied with water, and appellees polluted the water of said river to appellants' injury, then appellees would be liable. Appellees were liable to the city of Groesbeck for their alleged wrongful conduct in polluting the city's water supply, or the city's water, but could not be liable to appellants, or others who were only users of the city's water under contract with the city obligating itself to furnish pure wholesome water. If appellants could recover of appellees because they caused the city to breach its contract to furnish them suitable water for making ice, then all parties holding contracts with the city for good pure water could likewise recover of appellees, and there would be no end to such suits. If appellants had sued the city for breach of its contract, there could have been no question but that such breach was the proximate cause of the injury. Appellants alleged, in substance, that the city contracted to furnish them pure water to be used in manufacturing ice; that this was what induced them to erect their ice plant at Groesbeck. Appellants were looking to the city for suitable water. They had the right to so do under their contract with the city. The very damages suffered were the damages in contemplation of the parties in case the city breached its contract, but appellants were not looking to appellees for any-

thing; doubtless neither appellants nor appellees knew of the existence of the other.

It is true the general rule of proximate cause—that is, what was in the contemplation of the parties—applies in both contracts and torts, but not conjointly in the same case. If damages result directly from the breach of a contract, certainly such damages cannot be said to result directly or proximately from a tort by a third party in no way connected with such contract, although causing such breach. There being a contractual relation between appellants and the city, and appellants' damages resulting directly from a breach of said contract by the city, and there being no natural or legal relation between appellants and appellees, the injuries caused by the latter are too remote to constitute a basis of recovery. 17 C. J. 752, § 84, and cases cited. The breach of its contract by the city being the direct proximate cause of appellants' damages, it is immaterial that the acts of appellees may have caused or contributed to cause the city to do so. In Dale v. Grant, 34 N. J. Law, 142, cited in 57 Am. St. Rep. 206, it was held that an action would not lie in favor of a customer against a wrongdoer who stopped the machinery of a factory and prevented the proprietor from performing a contract, and thereby caused loss to the plaintiff, to whom the manufacturer had agreed to furnish goods; the court saying: ·

"But the law does not attempt to give full reparation to all parties injured by a wrong committed. If this were so, all parties holding contracts, if such exist, under the plaintiffs and who have been injuriously affected by the conduct of the defendants, would be entitled to a suit. It is only the proximate injury that the law endeavors to compensate; the more remote comes under the head of damnum absque injuria."

This, I think, is a correct statement of the law applicable to the facts of this case. The proximate injury suffered by appellants was the injury resulting from the failure of the city to comply with its contract, and while the injury suffered by the city by reason of appellees' polluting its water supply was, as to said city, proximate injuries and could all have been recovered in one suit by the city, yet the injuries suffered by appellants and others holding contracts under the city for water, by reason of appellees' causing the city to breach its contract, are, as to said parties, too remote, and therefore not recoverable by them. Brandon v. Gulf City, etc., Mfg. Co., 51 Tex. 121; Pauline Victoria Gonzales v. City of Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17; Brink et ux. v. Wabash Ry. Co., 160 Mo. 87, 60 S. W. 1060, 53 L. R. A. 811, 83 Am. St. Rep. 459; Daugherty v. Herzog, 145 Ind. 255, 44 N. E. 457, 32 L. R. A. 837, 57 Am. St. Rep. 204, and cases there cited; Fowler v. Athens City Waterworks Co., 83 Ga. 219, 9 S. E. 673, 20 Am. St. Rep.

313, and cases cited; 22 R. C. L. 116, and authorities cited; 17 C. J. 752, and authorities cited.

But appellants contend that the city of Groesbeck and appellees were joint tort-feasors, and even on that assumption they are jointly and severally liable, and appellants would have a right to recover from either or both of them. But this position is not tenable, in that appellants' cause of action against the city would have been ex contractu, while their cause of action against appellees would have been ex delicto; the former arising out of contract, the latter out of tort. So the city and appellees could not be joint tort-feasors. Galveston, etc., Ry. Co. v. Hennegan, 33 Tex. Civ. App. 314, 76 S. W. 452; 38 Cyc. 426. I think the rule of law is well settled that, when one is injured by the breach of a contract, another cannot be held liable on the ground his acts caused or contributed to the breach. In such case the injuries of the latter are too remote to constitute a cause of action, but the rule is different where the injury is done to one with a malicious intent to injure another through a contract relation.

It is thought appellants' assignments should be overruled, and the judgment of the trial court affirmed.