### DEMOCRAT PUBLISHING COMPANY v. F. B. JONES.

#### No. 3135.

1.   **Libel.**—To constitute libel it is not necessary that the language used should in express terms charge a crime.   The charge may be made by insinuation.   If the language of a publication be calculated to induce those who read it to believe the person of whom it was written is guilty of a crime it is sufficient to support an action.   See example.

2.   **Same.** — The words of a publication may be literally true, yet if the sense of the publication is to impute a crime it is libellous.

3.   **Truth as Justification in Libel Suit.** — A plea of justification by alleging the truth of the matter must meet the substance of the libel as alleged in the petition. It is not sufficient to allege and prove the truth of the several statements contained in the alleged libellous article; but to justify, the substance must be proved.   It was not error to refuse to submit as a defense the truth of the mere statements therein.

4.   **Privileged Publications.**—Newspapers are not at liberty under a real or supposed sense of social duty to publish defamatory articles about individuals.

5.   **Information and Belief of Truth.**—That the publication of libellous matter was upon information considered reliable, and which was believed to be true, is not a defense, but may be pleaded in mitigation of damages.

6.   **Special Damages.** — There was testimony tending to show that the plaintiff had been discharged from his employment, and probably by reason of the publication, although the discharge was some months after it.   The court charged among other things that the jury might "look to any special damages, if any are shown to have been sustained by him."   The defense asked the further charge; "that unless the jury find from a preponderance of the evidence that ———— discharged plaintiff from their employment because of the publication in question, they will find for defendant so far as this item is concerned."   It being a question whether plaintiff was discharged by reason of the publication, the requested charge should have been given.   Its refusal is ground for reversal.

APPEAL from Dallas.   Tried below before Hon. R. E. BURKE.
The opinion states the case.

*Pendleton, Chapman & Powell* and *A. T. Watts*, for appellant.—1.   No cause of action was alleged in plaintiff's petition, for that the publica-

tion therein set forth is, as alleged therein, a simple statement of the facts, and the truth of which is not therein denied.

2.    To constitute a publication libellous, it must be false.  Nor can a publication be given an unnatural and unreasonable construction by innuendoes.

3.    The truth of the statements contained in the publication is a defense to the action.    Const., sec. 8, Bill of Rights; Cool. on Torts, 2 ed., sec. 243, and note 2; Id., sec. 244, and note 2; Odgers on Libel and Slander, sec. 169.

4.    The publication being justified by the occasion, and being true, was a defense to the action.    Printing Co. v. Copeland, 64 Texas, 354.

5.    If the publication was made in good faith and upon information derived from credible persons, and was believed to be true, and justified by the occasion, then the publication was not libellous.

6.    To authorize plaintiff to recover damages on account of his being discharged from the employmet of B. F. Avery & Sons, the burden was upon him to show by a preponderance of evidence that such discharge resulted from the publication.

7.    The truth of each and every statement in the publication is a justification, and it was not incumbent upon appellant to prove that appellee had stolen the horse and buggy.    Odgers on Libel and Slander, sec. 169; Cool. on Torts, secs. 243, 244.

*Robertson & Gray*, for appellee.—1.  The petition did show a cause of action.    Starkie on Slander, pp. 55–59; Townsend on Slander and Libel, 4 ed., secs. 129, 133, 137.

2.    To constitute a publication libellous, its meaning must be false. Townsend on Slander and Libel, 4 ed., sec. 143.

3.    It is submitted that mere statements taken separately may be true; when taken altogether the clear meaning intended to be conveyed would be false and libellous.

4.    If the effect of the publication was to charge appellee with horse stealing, it could be justified only by proving that he did steal the horse and buggy.    It could be privileged only by proving it was proceedings in a court of justice, etc.    Cotulla v. Kerr, 74 Texas, 89.

TARLTON, JUDGE, *Section B.*—February 2, 1888, the appellee F. B. Jones instituted this suit in the District Court of Dallas County against Thomas Witten and the Democrat Publishing Company, the latter as the owner and publisher of the Fort Worth Daily Gazette.    The suit was subsequently discontinued as to Witten.    The plaintiff sought to recover the sum of $15,000 as general damages, and the sum of $2000 as special damages, on account of the publication on July 18, 1887, in the newspaper named, of the following alleged libellous matter:

### "HE DIDN'T COME BACK.

"Yesterday morning a well dressed stranger of slight build, dark complexion, medium height, about 40 years of age, went into the Ellis Hotel, registered as F. B. Jones, Dallas, and walked in to breakfast. After finishing his meal he went into the office, paid for it, and walked across the street to Witten's livery stable, where he ordered a horse and buggy, remarking that he wanted to go out to Mr. Cooper's. No questions were asked him by the man in charge, who harnessed up one of the best horses in the stable, a small bay, and hitched in front of the hotel where the stranger was in waiting. He jumped in and drove off without attracting any particular notice. This was between 8 and 9 o'clock, and up to midnight the man had not returned. Mr. Witten was reluctant to think that there was any crookedness in the case, but as hours wore away and his team still failed to show up, he grew uneasy and communicated the affair to the police. It was not practicable to make any extended search last night, but unless his outfit is forthcoming at an early hour no effort to find it will be spared. The buggy was of Milburn make, nearly new, with white running gear, and the horse one that could carry a man a long way in the course of a day. Scrutiny of a Dallas directory failed to reveal any such name as F. B. Jones. Though the case wears a suspicious look, the man may yet turn up and make a satisfactory explanation, but he will find a wrathy gentleman to explain to in the person of Captain Thomas Witten."

The plaintiff declared on the publication, in connection with innuendoes, as follows:

### "HE DIDN'T COME BACK.

"Yesterday morning a well dressed stranger of slight build, dark complexion, medium height, about 40 years of age [which is a good description of the plaintiff, and which innuendo was intended to mean and did mean that petitioner was not named F. B. Jones, but was passing under an assumed name for the purpose of aiding him to commit successfully the theft of a horse afterward in said article charged], went into the Ellis Hotel, registered as F. B. Jones, Dallas, and walked in to breakfast. After finishing his meal he went into the office, paid for it, and walked across the street to Witten's livery stable [where plaintiff says he had often hired teams and vehicles before], where he ordered a horse and buggy, remarking that he wanted to go out to Mr. Cooper's. [Which house plaintiff says is only six miles from Fort Worth, and where he had often before gone with teams from this same stable, and where this plaintiff's wife was then stopping.] No questions were asked him by the man in charge, who harnessed up one of the best horses in the stable, a small bay, and hitched in front of the hotel where the stranger [meaning plaintiff, and again indicating

that he had registered and was under an assumed name, and that F. B. Jones was not his right name] was in waiting. He [meaning plaintiff] jumped in and drove off without attracting any particular notice. [Which was intended to mean and charge, and did mean and charge, that plaintiff's intention was to steal said horse and buggy, and that he desired and did get away without attracting notice to him, as a thief would naturally do.] This was between 8 and 9 o'clock [meaning a. m.], and up to midnight the man had not returned [meaning plaintiff, and that if his intentions had not been to steal the horse and buggy he would have returned with them by that time]. Mr. Witten was reluctant to think that there was any crookedness in the case, but as hours wore away and his team still failed to show up, he grew uneasy and communicated the affair to the police. [Whereby defendant meant to charge, and did. charge and mean, that there was crookedness in the case, and that said Witten believed, and defendant believed, that plaintiff had stolen said horse and buggy and run away.] It was not practicable to make any extended search last night [which was intended to mean and did mean that this plaintiff had stolen said horse and buggy, and should be searched for by the police and other officers of the law and arrested for said offense], but unless his outfit is forthcoming at an early hour no effort to find it will be spared. [Which meant, if this plaintiff did not voluntarily return said property, which he was charged to have stolen, at once, that extraordinary efforts would be made to find it where plaintiff might have concealed or disposed of the same.] The buggy was of Milburn make, nearly new, with white running gear [which minute description of said buggy, as of the person of the plaintiff and of said horse, as in said communication contained, was given as well to emphasize the guilt of plaintiff, as charged, and to aid the officers of the law reading same, and other persons, to apprehend plaintiff as the thief who had stolen said horse and buggy], and the horse one that could carry a man a long way in the course of a day. [Which was intended to mean, and did mean, that plaintiff had stolen said horse and was by that time a long way from Fort Worth, and that he should be sought for by the officers of the law in the light of that information.] Scrutiny of a Dallas directory failed to reveal any such name as F. B. Jones. Though the case wears a suspicious look [which meant that the circumstances and facts related in said publication showed plaintiff had stolen said buggy and horse], the man [meaning plaintiff, and reiterating that he was using a name not his own] may yet turn up and make a satisfactory explanation [which meant and charged that the facts and circumstances showed that plaintiff had stolen the horse and buggy, but that plaintiff might explain them away], but he will find a wrathy gentleman to explain to in the person of Captain Thomas Witten."

Appellant answered by general demurrer, two special exceptions, a general denial, and specially, first, that the publication was justified by the occasion, and made in good faith upon the statements of reliable and responsible persons, and was believed true; second, that each and every statement contained in the publication was true; third, that in the next issue of the paper, July 19, 1887, appellant published a full explanation and retraction, setting out the same fully. June 11, 1889, the cause was tried; the demurrers were overruled, and on the verdict of a jury, judgment was entered for the plaintiff in the sum of $591.75; whence this appeal.

With reference to the exceptions to the petition it is urged, first, that the court erred in overruling the defendant's general demurrer, because the truth of the facts stated in the publication is not denied in the petition; secondly, that the court erred in overruling the first special exception, because from the publication itself it appears that it is neither false, malicious, nor libellous, and the truth of each statement in the publication is admitted in the petition; and thirdly, that the court erred in overruling the second special exception, because the publication is not susceptible of the forced, unnatural, and unreasonable construction placed upon it by the innuendoes.

The petition alleged, in substance, that in order to cause it to be suspected and believed by his neighbors and other citizens that plaintiff had been and was guilty of the theft of a horse and buggy, defendant did falsely and maliciously, etc., publish and circulate the false and libellous matter set out in the publication.

In order to constitute a libel, it is not necessary that the language should in express terms charge a crime. The charge may be made by insinuation. If the language of a publication be calculated to induce those who read it to believe that the person of whom it is written is guilty of a crime, it is sufficient to support an action. Zeliff v. Jennings, 61 Texas, 458; Gibson v. Williams, 4 Wend. (N. Y.), 320; Rundell v. Butler, 7 Barb. (N. Y.), 260; Gorham v. Ives, 2 Wend. (N. Y.), 534; Dottover v. Bushey, 16 Pa. St., 204; Stroebel v. Whitney, 31 Minn., 384; Lewis v. Hudson, 44 Ga., 568; Proctor v. Owens, 18 Ind., 21; Walton v. Singleton, 7 S. & R. (Pa.), 449. The words of a publication might be literally true, yet if the sense of the publication is to impute a crime, it will be deemed libellous. Language is often more significant in suggestion than in expression. Truth half-told is frequently more hurtful than blatant falsehood; it is not less venomous, and is more insidious. The tendency and effect of the publication in question was, in our opinion, to impute to appellee the commission of a crime. The truth of the publication was denied in the petition, because it was alleged to be false and libellous. We do not think that, taken in connection with the remaining allegations of the petition, the construction

given by the innuendoes to the publication was unnatural, strained, or unreasonable.    The demurrers were properly overruled.    The language of the publication is capable of the meaning ascribed to it by the innuendoes; and in such case, it should be left to the jury to say whether in fact it was so understood.    Patch v. Tribune Assn., 38 Hun (N. Y.), 368.

The appellant asked a charge, in effect, that "if the statements contained in the publication are all true, the jury should find for the defendant."    The refusal of the court to grant this instruction is assigned as error.    This instruction would have limited the jury, in inquiring into the truth or falsity of the publication, to a consideration of the truth of the mere statements thereof, without reference to the sense and substance of the publication.    This would have tended to mislead the jury.    The instruction was evidently requested under the defendant's plea of justification.    A plea of this character must meet the substance of the libel as alleged in the petition.    The evidence in support of the plea must establish the truth of the specific charge alleged to be libellous.    Here the alleged libellous matter does not consist in the falsity of the several statements contained in the publication, but in the falsity of the effect, substance, and imputations of the publication.    To justify, the whole of the libel must in substance be proved.    Odgers on Libel and Slander, sec. 169; 13 Am. and Eng. Encyc. of Law, 397, 398.    The special charge was properly refused.

The appellant next complains that the court erred in refusing a special instruction to the jury, that if the statements contained in the publication are true, and were proper for public information, they would find for defendant.    This charge is evidently founded upon the theory that the publication might have been considered a matter of privileged communication.    This imports that the publication is the offspring of a sense of duty owed to the public or to society.    On this subject it has been held, in effect, that newspapers are not at liberty, under a real or supposed sense of social duty, to publish defamatory articles about individuals.    We think that the charge under the evidence in this case was properly refused.    Odgers on Libel and Slander, sec. 198, note (a).

The third special instruction requested by the defendant was, in effect, that "if the jury believe that the statements were such matter as was proper, if true, for public information, and should further believe from the evidence that the defendant made the publication in good faith upon information given it by reputable persons, and believed the same to be true, they would find for the defendant, though the statements were false."

We have already indicated that the publication is not a privileged communication.    That portion of the instruction, therefore, referring

to the publication as proper for public information is inapposite and irrelevant. The latter portion is erroneous. An imputation that the plaintiff has committed a criminal charge can only be justified by proof of the truth of the charge. Cotulla v. Kerr, 74 Texas, 89. Information given the defendant by reputable persons, and believed by it to be true, could be pleaded in mitigation, but not in justification, of the libel. Kennedy v. Holborn, 16 Wis., 457.

The plaintiff alleged, that at the time of the publication he was in the employment of B. F. Avery & Sons, on a salary of $166.66 per month, and that because of the publication he was discharged by his employers; whence he alleged special damages in the sum of $2000. The testimony of the plaintiff was, that "he did not know the cause of his being discharged by B. F. Avery & Sons unless it was on account of this publication." He further testified, however, that he was notified in December after the publication that his services would not be wanted after January 1, 1888, but when January came he was requested to remain a few months longer, and did remain until March, when he was finally discharged. It was also in evidence that no one was employed to fill the vacancy created by the discharge of the plaintiff. No other element of special damages was pleaded by the plaintiff. The court charged the jury with reference to general and special damages, and that they might "look to any special damages, if any are shown to have been sustained by him."

Under these circumstances, the defendant requested an instruction, "that unless the jury find from a preponderance of the evidence that B. F. Avery & Sons discharged plaintiff from their employment because of the publication in question, they will find for defendant so far as this item of damages is concerned."

Special damages must be pleaded and proved by the plaintiff. They must be such as naturally and reasonably result from the libel complained of, or such as can be shown to have been in the defendant's contemplation at the time. Odgers on Libel and Slander, sec. 321. It is apparent from the evidence in this case that the discharge of the plaintiff months after the publication did not naturally or reasonably result from it. The special damages were therefore too remote. The court should not have referred to them in its charge; but having referred to them, it should have given at least the substance of the requested instruction. We can not say that this error was immaterial, because we have no means of ascertaining whether or to what extent the jury may have included special damages in their verdict.

It is unnecessary to set out the eighth, ninth, tenth, eleventh, twelfth, and thirteenth assignments. The subject matter of these assignments is practically covered and reviewed by the remarks already made. From these it is evident, in our opinion, that there was no error in the

charge given by the court and complained of by the appellant, save in the respect already adverted to.

The judgment should be reversed and the cause remanded.

*Reversed and remanded.*