John E. FOSTER, Appellant,

v.

LAREDO NEWSPAPERS, INC., Appellee.

No. 15428.

Court of Civil Appeals of Texas, San Antonio.

Nov. 12, 1975.

Rehearing Denied Dec. 10, 1975.

J. G. Hornberger, Laredo, for appellant.

Mann, Castiilon, Freed & Kazen, Laredo, for appellee.

KLINGEMAN, Justice.

This is a suit by appellant, John E. Foster, against appellee, Laredo Newspaper, Inc., for damages for alleged libelous statements made about appellant in a newspaper article in the Laredo Times, a newspaper published by appellee. This is an appeal from a summary judgment granted to appellee that appellant take nothing.

Appellant is the duly elected county surveyor of Webb County, Texas, and has also served as consultant engineer for Webb County over a period of years on various

and sundry projects. The alleged libelous statements appeared in a newspaper article published in the Laredo Times on Sunday, June 17, 1973. The newspaper article discussed flooding in the Del Mar Hills Subdivision near Laredo in Webb County and is in the nature of a conversation by the City Editor with Mr. Earl Rice, a developer of some homes in the subdivision. The alleged libelous statement is as follows: "The Rice development official said the flooded area in question was platted by Jack Foster, who doubles as consultant engineer for Webb County." The statement that the area in question was platted by Foster is incorrect.

■ Since this is a summary judgment proceeding, appellee, as movant for the summary judgment, had the burden of demonstrating the absence of any genuine issue of material fact as to one or more of the essential elements of appellant's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827 (Tex.1970). Appellee had the burden to establish as a matter of law that appellant had no cause of action and all doubts as to the existence of an issue of fact must be resolved against him. *Parrott v. Garcia,* 436 S.W.2d 897 (Tex.1969).

We first consider appellant's point of error that the appointment of the Hon. Walter Loughridge, a retired judge of this state, by the presiding judge of the Fourth Administrative Judicial District to preside at the trial of this case was not a proper appointment and was not made in accordance with the laws of this state, and that therefore all proceedings had in this case before Judge Loughridge and any judgment rendered therein by him is null and void for all purposes.

The record discloses that on September 16, 1974, the presiding judge of the Fourth Administrative Judicial District assigned Judge Loughridge, a retired judge, to the 111th District Court of Webb County, Texas, for the period beginning October 6, 1974, for the trial and disposition of any and all matters pending on the dockets of such court and which may come before him while filling such assignment. This assignment was never cancelled or withdrawn. By order dated January 21, 1975, the same presiding judge assigned another retired judge to the 111th District Court for the purpose of trying this particular case, but this assignment was cancelled and withdrawn by such presiding judge on January 29, 1975. The summary judgment herein was heard by Judge Loughridge on February 3, 1975, and various other proceedings in this case were also heard before Judge Loughridge.

Appellant cites no cases in support of his point of error. Appellant argues that, under the record, there is absolutely no reason for the assignment of Judge Loughridge to try this case; that Judge E. D. Salinas is the duly elected, qualified, and acting judge for such court, and the record is silent as to any disability or disqualification on his part; and there is no indication that there is an overcrowded docket. He contends that to permit a presiding judge to assign a retired judge to a court without a written request by the elected judge usurps the power of the elected judge and disenfranchises the electorate of the services of the judge that it has chosen; and that such power in the hands of the presiding judge is not permitted under the constitution and laws of the State of Texas.

It is clear that the applicable constitutional and statutory provisions pertaining to transfer, assignment and exchange of benches of judges confer broad and discretionary powers. Article 5, Section 1a, Texas Constitution; Article 5, Section 11, Texas Constitution; Article 200a, Section 5, Tex. Rev.Civ.Stat.Ann.; Article 1916 Tex.Rev. Civ.Stat.Ann.; Article 6228b, Section 7; 33 Tex.Jur.2d, Judges, Section 106. It was pointed out in *Randel v. State,* 153 Tex. Cr.R. 282, 219 S.W.2d 689 (1949), that under these constitutional and statutory provisions, district judges have broad discretionary power to exchange benches or hold courts for each other, and that no limitations as to time, place, or occasion when the exchange of benches might occur has been fixed.

It appears from the record that in addition to rendering the summary judgment herein complained of, Judge Loughridge also presided over and heard various other court proceedings in this cause and that, in connection therewith, appellant, through his lawyers, appeared therein and filed extensive pleadings. In none of these pleadings or anywhere else in the record is there any suggestion that appellant at any time questioned the right, power or authority of Judge Loughridge to preside over this case.

■■ A complaint that the trial judge was without right to sit for another district judge is not fundamental error and cannot be urged for the first time on appeal. *Hawkins v. Everts,* 91 S.W.2d 1086 (Tex. Civ.App.—Fort Worth 1936, writ ref'd). Where no objection is made in the trial court to the right of a judge from another district to sit in a case, and no question as to his qualification is made, all objections and exceptions to his power and authority to try the case are considered waived. 33 Tex.Jur.2d, Judges, Section 108. In *Moye v. Houston Oil Co.,* 260 S.W. 294 (Tex.Civ. App.—Beaumont 1924, writ dism'd), it was held that, where no timely exception to the power and authority of the trial judge to try a case was made, the appellant was estopped from complaining on appeal that the judge had no authority to try it, and it must be presumed that the trial judge was in the regular discharge of his duties under one of the statutory provisions authorizing him to preside. See also *Shultz & Bro. v. Lempert,* 55 Tex. 273, 280 (1881); *Lewis v. State,* 481 S.W.2d 139 (Tex.Crim.1972); *Buchanan v. State,* 471 S.W.2d 401 (Tex.Crim. 1971); *Pendleton v. State,* 434 S.W.2d 694 (Tex.Crim.1968); *Carter v. State,* 95 S.W.2d 447, 450, 130 Tex.Cr.R. 569 (1936). Appellant's first point of error is without merit and is overruled.

Appellant's other points of error complain that the trial court erred in granting a summary judgment because: (1) appellant was neither a public official nor a public figure as those terms are defined by the courts of this state and of the United States; (2) questions of fact exist as to (a) whether the alleged libelous statement was made with malice, (b) whether such statement made substantial damages to appellant's reputation apparent, (c) whether appellee was guilty of negligence in publishing such statement, (d) damages, and (e) punitive damages.

Implicit in the judgment of the trial court is the holding that at the time of the publication of the alleged libelous article, appellant was either a public official or a public figure as those terms have been defined by federal and state courts in libel cases. The nature and extent of a publisher's constitutional privilege against liability for defamatory statements has been the subject of a number of decisions of the Supreme Court of the United States. In the landmark case of *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Court concluded that a rule compelling a critic of official conduct to guarantee the truth of all his factual assertions would deter protected speech, and announced the constitutional privilege designed to counter that effect (frequently referred to as the "New York Times rule") which is as follows: "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'— that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. 254 at 279–80, 84 S.Ct. at 726.

Three years after the *New York Times* decision, the Supreme Court extended this constitutional privilege to defamatory criticisms of "public figures," in *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), and its companion case, *Associated Press v. Walker,* 388 U.S. 130, 162, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In these cases the Court held that the *New York Times* rule should apply to criticism of "public figures" as well as

"public officials," and also extended that privilege to protect defamatory criticism of non-public persons who are nevertheless intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large.

Three years later in *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), Mr. Justice Brennan, speaking for a plurality of the Court, took the *New York Times* privilege one step further and concluded that the protection should extend to defamatory falsehoods relating to private persons if the statements concern matters of general or public interest. However, in this case, no majority of the Court could reach a controlling rationale, but affirmed the decision of the court below that the *New York Times* privilege was applicable to a libel suit by a distributor of a nudist magazine against a local radio station.

Later in *Gertz v. Welch*, 418 U.S. 322, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), a majority of the Court held that the first amendment protection afforded news media against defamatory statements by public persons is not extended to defamatory suits by private individuals.[1]

The Court, however, in *Gertz* stated: "We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. It is preferable to reduce the public figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." 418 U.S. 322 at 351, 94 S.Ct. at 3013.

■ It is undisputed from the record that (a) Foster is the public surveyor of Webb County, (b) such office is an elective office provided for under the laws of this state, (c) Foster's name has appeared on the public ballot in Webb County on numerous occasions, and he has been elected to such office by the voters of Webb County on numerous occasions, (d) at the time of the alleged libel and for many years before, Foster was the county surveyor of Webb County.

It is also undisputed that Foster, over a period of years, had been employed by Webb County as the consultant engineer on various public projects, including construction of county swimming pools, development of recreational areas, drainage problems in the Del Mar Hills Subdivision, road improvements, jail house improvements, design of a children's park, and work at a county dam. There is testimony that these projects covered the vast majority of all the major county projects during the last ten years and that Foster was the engineer in charge of such projects. It is clear from the record that Foster was hired by Webb County for these projects and was paid out of public funds for such work.

It is also clear that Foster had taken an active part in the particular activities giving rise to the defamation. The newspaper article in which the alleged libelous statement was made involved the problem of flooding in the Del Mar Hills Subdivision, which was a matter of considerable public interest in Laredo and in Webb County, and had resulted in citizen's complaints and

---

1. This was the suit by an attorney who represented a murder victim's family in a civil suit against a police officer who had been convicted of the murder, against a publisher of a magazine for an article in the magazine which inaccurately (1) portrayed the attorney as the author of a "frame-up" against the officer, (2) implied that the attorney had a criminal record, (3) identified the attorney as a "Leninist" and a "Communist-fronter." The attorney, several years prior to the incident here involved, had briefly served on housing committees appointed by the mayor of Chicago but had never held a remunerative governmental position. The court held that the attorney was neither a public official or a public figure within the first amendment rule.

public meetings in Laredo. Such flooding problems had been the subject of a previous article in the Laredo Times which covered a public meeting of the Commissioner's Court on June 11, 1973, at which time, a private citizen, Mr. Anderson, a resident of the Del Mar Hills Subdivision had complained about the flooding problem. This same citizen had previously complained to the Commissioner's Court in 1972 about such floods and, as a result of such complaint, Foster was called in by the Commissioner's Court to investigate and make a study of the drainage problem. Such study was made by Foster and he reported to the Commissioner's Court in this regard. Foster was paid for such services by Webb County. When Anderson returned to the Commissioner's Court a second time in June, 1973,

Foster was again called by the Commissioner's Court because of his familiarity with the problem and participated in the public meeting.

It would appear that Foster was not only involved in the particular controversy giving rise to the suit here involved but that his participation and involvement was connected with and arose out of his official duties and services for Webb County, either as a public official of Webb County or as a paid consultant engineer for such county.

In our opinion, Foster clearly falls within the most restrictive definition of a "public official" or a "public figure," and we hold that he was both a public official and a public figure as those terms are defined by the courts of this state and of the United States.[2]

**2.** Some pertinent cases in which a plaintiff has been held to be either a public official or a public figure may be summarized as follows:

In Texas, a professor in the University of Texas at El Paso, who led an anti-Vietnam demonstration was held to be a public figure as a matter of law. *El Paso Times, Inc. v. Trexler,* 447 S.W.2d 403 (Tex.1969).

In *Klahr v. Winterble,* 418 P.2d 404 (Ariz. 1966), a student elected to the student senate of a state university was held to be a public official under the *New York Times* rule. Summary judgment was entered against the plaintiff in a libel action.

In *Ryan v. Dionne,* 28 Conn.Sup. 35, 248 A.2d 583 (1968), plaintiff was a Delinquent Tax Collector for the City of Waterbury, where a plaintiff was held to be a public official in a libel suit. The court said: "To the office of collector of delinquent taxes are attached a right and a duty both created and conferred by operation of law. . . . During his tenure, the incumbent of that office has the duty and correlative power to perform certain defined and continuous functions in the public interest." Summary judgment was granted for defendant.

In *Bishop v. Wometco Enterprises, Inc.,* 235 So.2d 759 (Fla.Ct.App.1970), the plaintiff was employed in his professional capacity as an investigator for the City of Miami in an investigation of tax assessment practices in the tax assessor's office. The court held that plaintiff, as a paid professional employee of the City of Miami, brought himself into the public arena and subjected himself to criticism and fair comment and held that plaintiff was subject to the *New York Times*

rule which requires proof that the alleged libels were published with actual malice.

In *Standke v. B. E. Darby & Sons, Inc.,* 291 Minn. 468, 193 N.W.2d 139 (1971), *cert. denied,* 406 U.S. 902, 92 S.Ct. 1608, 31 L.Ed.2d 813 (1972), the plaintiffs were members of a grand jury who brought suit against a newspaper publisher for alleged libelous statements. A summary judgment for the publisher was affirmed by the appellate court who said: "Although we have found no decisions involving grand jurors . . . it is clear under the New York Times doctrine that, in view of the public interest in the performance of functions delegated by law to the grand jury, the interests of free and open discussion demand that grand jurors in this case must be considered public officials or figures."

In *Turley v. W.T.A.X., Inc.,* 94 Ill.App.2d 377, 236 N.E.2d 778 (Ill.Ct.App.1968), the plaintiff was a professional architect and the alleged libel related to his services as an architect in a new county building. The plaintiff was held to be a public official with the court stating that the privilege of the press to criticize public officials extends to the work of independent contractors paid out of public funds.

In *News-Journal Co. v. Gallagher,* 233 A.2d 166 (Del.1967), Gallagher sued the publisher for alleged libelous statements. The court said: "Mr. Gallagher was at all pertinent times Chairman of the Wilmington City Republican Committee. His business was that of realtor, including collection of rents for property owners. . . . [I]t cannot be disputed that he was a public figure in the city and county by virtue of his political position. Moreover, the publicity

Assuming that Foster was either a public official or a public figure, as we have held, he cannot recover damages for the alleged defamatory statement in the absence of actual malice. *New York Times Co. v. Sullivan, supra; Curtis Publishing Co. v. Butts, supra; El Paso Times v. Trexler, supra.* Actual malice is defined in these cases as a statement made with actual knowledge that it was false or with reckless disregard of whether it was false or not.

Appellant's contention that the alleged libelous statement was made with malice is founded upon the following grounds: (a) the responsible representatives of appellee knew that there was a great deal of public resentment over the fact that the particular area was flooded, (b) the name of the person platting the area involved was a matter of public record, and that appellee was under a duty to investigate the truth of the statement, (c) the use of the word "doubles" in the article has a connotation of duplicity and deceitfulness and implies malice, (d) the alleged libelous statement was not "hot news" and haste in publication was not essential.

Our Supreme Court in *Dunn & Bradstreet, Inc. v. O'Neil,* 456 S.W.2d 896, 900 (Tex.1970), stated:

> "We hold that there is no probative evidence to raise a fact issue of actual malice. . . . The *New York Times* definition of actual malice which this Court applied in *El Paso Times* is likewise applicable in the instant case, all three cases being libel suits, all three cases involving publishers' privileges, and all three cases requiring malice to overcome

the privileges. Insofar as the definition of malice is concerned we do not think the instant case involving a conditional privilege is distinguishable from the *New York Times* and *El Paso Times* cases which involve First Amendment Constitutional privileges. In *El Paso Times,* this court held:

> 'Failure to investigate the truth or falsity of a statement before it is published has been held insufficient to show actual malice. Negligence or failure to act as a reasonable prudent man is likewise insufficient.'

> . . . Plaintiff's evidence may establish that defendant was negligent in failing to verify the bankruptcy information but the evidence does not raise a fact issue regarding whether or not the defendant acted 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"

The United States Supreme Court in *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), in holding that malice requires proof that the false publication was made with a knowledge or awareness of probable falsity said: "These cases are clear that reckless conduct is not measured by whether a reasonable prudent man would have . . . investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the publication. . . . Failure to investigate does not itself establish bad faith. . . . St. Amant's mistake about his probable legal

arose out of work he was performing for a state agency, as to which the people of the state were entitled to information."

In *Greenbelt Cooperative Publishing Association v. Bresler,* 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970), the plaintiff was a real estate developer and builder in Greenbelt and also a member of the Maryland House of Delegates from a neighboring district. He had engaged in negotiations with the city council of Greenbelt to obtain certain zoning variances and other negotiations relative to the purchase of lands owned by Bresler for

the construction of a new school. Such negotiations evoked substantial local controversy and several city council meetings were held at which many members of the community expressed their views. The Supreme Court stated that Bresler was deeply involved in the future development of the city and that negotiations of significant public concern were in progress both with school officials and the city council and that Bresler's status clearly fell within the most restrictive definition of a "public figure."

liability does not evidence a doubtful mind on his part. That he failed to realize the import of what he broadcast—and was thus 'heedless' of the consequences for Thompson—is similarly colorless." 390 U.S. 721 at 731, 733, 88 S.Ct. at 1325.

In *Beckley Newspapers Corp. v. Hanks,* 389 U.S. 81, 84–85, 88 S.Ct. 197, 200, 19 L.Ed.2d 248 (1967), the Court said: "[I]t cannot be said on this record that any failure of petitioner to make a prior investigation constituted proof sufficient to present a jury question of whether the statements were published with reckless disregard of whether they were false or not."

See also *Mayfield v. Gleichert,* 484 S.W.2d 619 (Tex.Civ.App.—Tyler 1972, no writ); *Carey v. Hume,* 390 F.Supp. 1026 (D.C.D.C. 1975); *Washington Post Co. v. Keogh,* 125 U.S.App.D.C. 32, 365 F.2d 965 (1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967).

The pertinent summary judgment evidence here involved may be summarized as follows: Appellant, in his summary judgment affidavit, expressed the opinion that the statement was made with malice, and in support of such contention, stated that the public records of Webb County revealed that he did not plat the area involved, and that a check of such records here involved would have so revealed, and that therefore appellee had constructive knowledge of the falsity of such statement. He further stated that the word "doubles" as used was meant to indicate that he was guilty of deception.

Both the publisher and managing editor of the Laredo Times testified that they had not seen the alleged libelous article until after it was published.

The City Editor of the Laredo Times, Mr. Arambula, who wrote the article, testified that the statement in the article that Foster platted the affected area was exactly what Mr. Rice said; that he took shorthand notes of the conversation and his shorthand notes reflected that Rice made such statement. He testified that there was no doubt in his mind that Rice was telling him the truth and that he believed the statement was true at the time he printed it.

Earl Rice, the developer, testified that he went to Arambula's office on his own accord; that Arambula was taking notes during the conversation; that he (Rice) did about 90% of the talking; that he injected the name of Foster into the conversation; that he did tell Arambula that Foster had platted an area in Del Mar Hills Subdivision, but that he meant a different area than that which was experiencing the flooding problem; but that the nature of the conversation was such that Arambula could have easily misunderstood him on this point.

The summary judgment proof at most shows only that the statement that Foster platted the area was incorrect, and does not in any way indicate that Arambula knew it was incorrect or published it with a reckless disregard of whether it was false or not.

Appellant's contention that the word "doubles" as used in the article evidences malice is without merit.[3] It is undisputed that Foster was not only County Surveyor of Webb County, but also frequently served as consultant engineer for such county. A common and accepted use of the word doubles is "serves two purposes." Under the record, the term "doubles as consultant engineer," is both true and correct. The word "doubles" is frequently used to mean "to serve in an additional capacity" or "to perform an additional duty." Webster's New Twentieth Century Dictionary 547 (2d ed., unabridged, 1964). We see nothing odious, offensive or malicious about the term as used, and it is an accurate and correct portrayal of the services performed by Foster for Webb County.

With regard to appellant's contention that the matter discussed in the article was not "hot news," it is clear that the subject

---

**3.** "Jack Foster, who doubles as consultant engineer for Webb County. . . . ."

matter involved in the news article was of considerable public interest in Laredo and Webb County and had been the subject of a previous article in the Laredo Times only a few days before. The newspaper article in which the alleged libelous statement was made resulted after an interview with Mr. Earl Rice who had some complaint about the previous article. There is nothing in the record to indicate or even suggest that the article here under attack was published with undue haste, and certainly it was timely news.

There is nothing whatsoever in the record to indicate that the alleged libelous statement was made with actual knowledge that it was false, or with reckless disregard of whether it was false or not. The summary judgment establishes as a matter of law that such publication was not made with malice as that term is defined in the applicable state and federal court decisions.

Appellant's other points of error are predicated upon a finding that appellant is neither a "public figure" nor a "public official." In view of our holding that appellant is either a "public official" or "public figure," and that the alleged defamatory statement was not published with malice, appellant's other points of error are without merit and all are overruled.

The summary judgment evidence establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of appellant's cause of action. Appellee is entitled to a take nothing judgment as a matter of law. The trial court did not err in granting appellee's motion for summary judgment, and the judgment is affirmed.