Donald J. POE and wife, Effie
Poe, Appellants,

v.

SAN ANTONIO EXPRESS–NEWS
CORPORATION and Rupert J.
Murdoch, Appellees.

No. 16150.

Court of Civil Appeals of Texas,
San Antonio.

Sept. 19, 1979.

Rehearing Granted as to Rupert J.
Murdoch, Oct. 24, 1979.

Rehearing Denied as to Appellee Express-
News Corp., Oct. 24, 1979.

Second Motion for Rehearing Overruled as
to appellee Express-News Corp.,
Nov. 21, 1979.

Earle Cobb, Jr., Cobb, Thurmond, Bain &
Clark, San Antonio, for appellants.

G. Thomas Coghlan, Mark J. Cannan,
Lang, Cross, Ladon, Boldrick & Green, San
Antonio, for appellees.

## OPINION

KLINGEMAN, Justice.

This is an appeal from a summary judg-
ment proceeding in a defamation suit.
Donald H. Poe and wife, Effie Poe, brought
suit against San Antonio Express-News
Corporation and Rupert J. Murdoch[1] for
damages allegedly arising out of a publica-
tion in the San Antonio Express-News dat-
ed September 19, 1976, which suit is found-
ed on theories of libel, slander, malicious
prosecution, barratry, unlawful interference
with plaintiff's right of privacy, interfer-
ence with plaintiff's employment contract,
and abuse of process. Defendant's answer
consisted of a general denial and the de-
fenses that the statements contained in a

1. Prior to the trial, Murdoch made a special
appearance under Rule 120a, contending he
should be dismissed for want of jurisdiction,

and an order to that effect was entered on
March 20, 1978.

newspaper article were true or substantially true; that the publication in question was absolutely privileged under Article 5432, or alternatively, the provision was conditionally privileged; that Poe was a "public official" at all material times and that the article was not published with malice; and that Poe's damages are at best nominal.

On May 15, 1978, defendant moved for summary judgment based upon the pleadings, depositions on file, and affidavits and exhibits affixed to the motion. On June 5, 1978, judgment was entered granting defendant's motion for summary judgment and decreeing that plaintiff take nothing. San Antonio Express-News Corporation will sometimes be referred to hereinafter as defendant, and Donald H. Poe and wife, Effie Poe, as plaintiff.

Donald Poe was a school teacher, who taught science at Fox Tech High School, and Effie Poe was his wife, at all times material since this cause arose. Mr. Poe taught school for 22 years. On Sept. 8, 1976, a female member of his science class accompanied by her mother reported to the San Antonio Police Department (SAPD) that Mr. Poe had sexually molested her after school in the classroom. These allegations resulted in an investigation by the SAPD and by the Fox Tech principal. The principal, after his investigation, decided that Mr. Poe should remain as a teacher.

Shortly thereafter, the student, her mother, and a neighbor telephoned Paul Thompson, a columnist employed by defendant, and related their version of the story. Subsequently, Thompson telephoned the, then, Bexar County District Attorney, Ted Butler, about this matter. After completion of interviews with various parties (none of which were with Poe), Thompson wrote the article which appeared in the San Antonio Express-News on Sept. 19, 1976, and which is the basis of plaintiff's cause of action. On Oct. 20, 1976, the Bexar County Grand Jury returned an indictment charging plaintiff with indecency with a child. Plaintiff was found not guilty after a jury trial. Plaintiff sometime thereafter brought this action for actual and exemplary damages.

The allegedly libelous newspaper article has the following headline: "GIRLS SAY TEACHER FONDLED THEM." The first paragraph reads as follows:

This really happened the afternoon of Sept. 8 at one of our local high schools: A 14-year-old girl freshman rushed from the building in tears claiming a middle-aged male teacher had spoken dirty words and fondled her obscenely while he had her one-on-one in his classroom.

Another portion of the column reports that when the girl was ordered to remain in the classroom after school "unhinged male hanky-panky broke out"; that the teacher began talking "tensely and breathing spastically"; that "a strange hooded look came into his eyes"; that "he flung his arms around her and began asking questions about menstruation, personal hygiene, whether she ever 'made out with a boy,' and similar touchy matters"; that "he capped this performance by suddenly unzipping her jeans and placing a hand inside."

The article later declares that "as for the mid-fortyish teacher, he steadfastly denied any wrongdoing and called the charges against him a tissue of lies and a total invention."

In thirteen points of error plaintiff asserts that the trial court erred: (1) in granting the motion for summary judgment; (2) in holding as a matter of law that Poe was a "public official"; (3) in holding as a matter of law that there was no libel or slander because Poe was not identified by name in the article published; (4) in holding that the statements made by defendant were privileged; (5) in holding that the statements made by defendant were not libelous, slanderous, or defamatory; (6) in holding that defendants were not negligent; (7) in holding that there was no intentional or negligent interference with Poe's employment contract; (8) in holding that there was no abuse of process; and (9) in holding that there was no invasion of privacy.

This is a summary judgment proceeding. When a person elects to file a motion for

summary judgment pursuant to Rule 166–A of the Texas Rules of Civil Procedure, he takes upon himself an extraordinary burden. In a summary judgment proceeding, the burden is on the movant to establish, as a matter of law, all the matters constituting his cause of action or his defense. All doubts as to the existence of a genuine issue of a material fact are resolved against the movant. If the motion involves the credibility of affiants or deponents, or the weight of the showings, or a mere ground of interference, the motion should not be granted. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. Evidence which favors the movant's position is not considered unless it is uncontradicted. If such uncontradicted testimony is from an interested witness, it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct and positive, and there are no circumstances in evidence tending to discredit or impeach such testimony. *Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Company*, 391 S.W.2d 41 (Tex.1965).

In such cases, the question on appeal, as well as in the trial court, is *not* whether the summary judgment proof *raises fact issues* with reference to the essential elements of the plaintiff's claim or cause of action, but whether the summary judgment proof *establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements* of the plaintiff's cause of action. The provisions of Rule 166–A are applicable to defendants and plaintiffs who move for summary judgment; the judgment should be granted, and if granted should be affirmed, *only* if the summary judgment record establishes a right thereto as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

■ Defendant relies heavily on *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), both here and in the trial court. It asserts that under such holding Poe is a "public official" and, as such, is not entitled to recover liability unless he shows that the statement was made "with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." [Hereinafter referred to as the *New York Times* standard.] Plaintiff relies heavily on *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), and *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809 (Tex.1976).

*Gertz* is particularly important because it (1) modifies previous holdings of the Supreme Court on the characteristics of a public official or public figure; (2) holds that States may define for themselves the applicable standard of liability for a publisher or broadcaster of a defamatory publication injurious to a private individual so long as they do not impose libel without fault; (3) sanctions a less strict negligence standard of liability in defamatory action instituted by private individuals. In *Foster v. Laredo Newspapers, Inc.*, 530 S.W.2d 611 (Tex.Civ.App.), this court affirmed a summary judgment that Foster take nothing in a libel action instituted by Foster against the Laredo Newspaper. This court held that Foster was both a "public official" and a "public figure" and that the *New York Times* standard was applicable. The Supreme Court of Texas reversed both this court and the trial court and remanded the case to the trial court for a new trial holding that no evidence existed establishing that Foster was either a public official or a public figure. Recognizing its options under the *Gertz* decision, the court declined to extend to private individuals the *New York Times* standard of requiring proof of actual malice, and established an ordinary negligence standard.[2]

2. Foster was a duly elected county surveyor of Webb County and his name had appeared on the ballot on numerous occasions. He also was a consulting engineer engaged in private practice and had been employed by Webb County as a private consulting engineer to perform specific projects for which he was paid. One such project involved investigation by Foster of a flooding problem in a subdivision known as Del Mar. The Laredo Times published an arti-

Defendant cites a number of cases from outside jurisdictions holding that a school teacher is a public official. Under *Gertz* and *Foster* we are not compelled to follow these holdings. Defendants cite no Texas decisions, nor have we found any, holding that a school teacher is a public official. Texas courts have not held that all governmental employees are public officials. *Foster* holds to the contrary.

Defendant makes no contention herein that Poe is a public figure, but asserts that as a matter of law he is a public official. The summary judgment proof wholly fails to establish as a matter of law that Poe is a public official. There is nothing in the summary judgment proof to establish that Poe is a "public figure" as that term is used in libel suits.[3] The trial court erred in holding that Poe was a public official.

cle on the flooding problem making certain references to Foster, some of which were incorrect. The Supreme Court of Texas pointed out that the initial and crucial question was whether the court of civil appeals correctly classified Foster as a public official or public figure. In reversing this court, the Supreme Court of Texas discussed in some detail the question of who can be characterized as a public official or public figure in defamatory suits. It held that the summary judgment evidence failed to establish that Foster was either a public official or public figure, and declined to extend the *New York Times* standard to actions by private individuals seeking to recover compensation for actual injuries adopting an ordinary negligence standard in defamatory actions by private individuals such as Foster.

**3.** For late expressions by the United Supreme Court on the question of "public official" or "public figure," see *Hutchinson v. Proxmire*, —— U.S. ——, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979), and *Wolston v. Reader's Digest Ass'n, Inc.*, —— U.S. ——, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979).

In *Proxmire*, the Court held that a United States Senator's press release and newsletters were not protected under Constitution's speech or debate clause, and that the scientist was not a public figure. Hutchinson, a research behavioral scientist who had received funds from federal agencies to investigate the behavioral patterns of animals, brought a suit for defamation against Senator Proxmire and his aide arising from the Senator's giving his "Golden Fleece of the Month Award" for egregious and wasteful government spending to the federal agencies that had funded the scientist's work. The award was announced by the Senator in a speech prepared with the help of his aide, part of which was later incorporated in a widely distributed press release. The District Court granted summary judgment to defendants holding, among other things, that (1) the speech or debate clause of the U. S. Constitution pertaining to members of Congress afforded absolute immunity for the press release covering the speech; (2) Hutchinson was a public official and public figure with respect to the First Amendment rule requiring proof in a defamation suit that the alleged defamation was made with actual malice as a prerequisite to recovery. The U.S. Court of Appeals affirmed the judgment of the District Court without passing on the question of whether plaintiff was a public official, but held that the scientist was a public figure with respect to the First Amendment rule. On certiorari, the U. S. Supreme Court reversed and remanded. In its opinion the Supreme Court did not pass on the question of whether Hutchinson was a public official. However, it did note that for the purpose of the rule required under the First and Fourteenth Amendments, which prohibit a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves the statement was made with actual malice, not all public employees are included within the category of "public official." The Court held that Hutchinson did not qualify as a "public figure" with respect to the First Amendment rule regarding a defamation action by a "public figure," notwithstanding that local newspapers had reported his successful application for federal funds and that newspapers and wire services had reported his response to the Senator's announcement of the Golden Fleece Award. In its opinion, the Court stated: "Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." —— U.S. at ——, 99 S.Ct. at 2688, 61 L.Ed.2d, *supra*, at 431.

In *Wolston*, the Supreme Court held that a defamation plaintiff who pled guilty to contempt for non-appearance before a grand jury investigating espionage activities, was not a "public figure" for purposes of his suit over a book identifying him as a Soviet agent indicted for espionage. Wolston brought an action for defamation against the author and publishers of the book in the United States District Court for the District of Columbia, contending that passages in the book stating that he had been indicted for espionage and had been a Soviet agent were false and defamatory. The District Court granted the defendant's motion for summary judgment, holding that Wolston was a "public figure," who under the First Amendment rule for defamation actions had to prove that defendants published a defamatory falsehood with actual malice. The United States Circuit Court of Appeals for the District of Columbia affirmed.

Relying on its contention that Poe is a public official, defendant asserts that the publication involved is privileged under the provisions of Article 5432, Texas Revised Civil Statutes. The pertinent part of such Article relied on by defendant reads as follows:

The publication of the following matters by any newspapers or periodicals shall be deemed privileged and shall not be made the basis of any action for libel:

. . . . .

4. A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information.

Having failed to establish that Poe was a public official as a matter of law, defendant's burden of establishing that the publication was privileged is considerably more onerous. Under these circumstances it was not incumbent upon plaintiff to prove malice or negate the matter of privilege. To the contrary, it was defendant's burden to establish the privilege relied on by it as a matter of law.

The act or conduct which Poe was charged with in the publication involved is a criminal act subject to punishment by imprisonment.[4] To charge one falsely with the commission of any crime for which he may be punished by imprisonment is slander or libel *per se*. *Christy v. Stauffer Publications, Inc.*, 437 S.W.2d 814 (Tex. 1969); *Democrat Publishing Co. v. Jones*, 83 Tex. 302, 18 S.W. 652 (1892); *Houston Chronicle Publishing Co. v. Flowers*, 413 S.W.2d 435 (Tex.Civ.App.—Beaumont 1967, no writ); *Hornby v. Hunter*, 385 S.W.2d 473 (Tex.Civ.App.—Corpus Christi 1964, no writ); *Davila v. Caller-Times Publishing Co.*, 311 S.W.2d 945 (Tex.Civ.App.—San Antonio 1958, no writ); *Houston Chronicle Publishing Co. v. Bowen*, 182 S.W. 61 (Tex. Civ.App.—Galveston 1915, writ ref'd).

*Christy* discusses Article 5432 in relation to a person allegedly libeled who was not a public official. See also *Bell Publishing Co. v. Garrett Engineering Co.*, 141 Tex. 51, 170 S.W.2d 197 (1943); *Gibler v. Houston Post Co.*, 310 S.W.2d 377 (Tex.Civ.App.—Houston 1958, writ ref'd n. r. e.).

The summary judgment evidence does not establish either an absolute or conditional privilege as a matter of law.

On certiorari, the United States Supreme Court reversed, holding that a person who engages in criminal conduct does not automatically become a "public figure" within the meaning of the First Amendment rule pertaining to defamatory actions for purposes of comment on a limited range of issues relating to his conviction, and that the defamation plaintiff, Wolston, was not a "public figure" in the case at bar.

*Proxmire* and *Wolston* are important as exemplifying the recent trends of courts, including the United States Supreme Court, in modifying the rigid rules as to what constitutes a "public official" or "public figure" in defamation suits against the news media and in sanctioning a less stringent standard than the *New York Times* standard in suits against publishers of defamatory statements relating to matters of public and general concern. This standard is particularly applicable to a person who (a) may be a governmental employee or may receive government grants or other benefits from governmental agencies; (b) may even be an elected official (*Foster*); (c) has not attained such prominence that he is a "public figure" for all purposes; and (d) has received some publicity in the news media, or whose access to such publicity came after the alleged libel.

4. At the time of the publication involved, Poe was not under arrest nor had he been charged by any law enforcement authorities with any type of criminal offense. Subsequently, he was indicted by the Grand Jury for the commission of a criminal offense, and thereafter he was tried for said offense and found not guilty by the jury. Plaintiff contended in the trial court and here asserts that Paul Thompson, the columnist who wrote the article involved, was instrumental in and in part responsible for the matter being brought before the Grand Jury, and plaintiff's pleadings alleged causes of action of malicious prosecution and abuse of process. Thompson in his deposition states that he called the District Attorney of Bexar County and obtained a commitment that the matter would be submitted to the Grand Jury. The article involved closes with this statement: "Bringing both young ladies and the high school teacher in front of the Bexar County grand jury to tell their stories in full has to be the best and only solution now. And Dist. Atty. Ted Butler has indicated that is precisely what he and his aides aim to do. Promptly. Forcibly. With all the stops out."

■ Defendant also asserts that the summary judgment is proper because the article did not name Poe. We do not agree. Poe is not necessarily precluded from recovery because he was not named in the publication here involved. Our courts have held that in an action for libel the asserted libel must refer to some ascertainable person and that person must be plaintiff. Nevertheless, these courts have also held that it is not necessary for the individual alluded to be named if those who knew and were acquainted with the plaintiff understood from reading the publication that it referred to plaintiff. *Newspapers, Inc. v. Matthews*, 161 Tex. 284, 339 S.W.2d 890, 894 (1960); *Gibler v. Houston Post Co., supra; Red River Valley Publishing Co. v. Bridges*, 254 S.W.2d 854 (Tex.Civ.App.—Dallas 1953, writ ref'd n. r. e.). *Gibler* cites a number of cases so holding and cites with approval from Prosser on Torts, 2d Ed., p. 583, wherein it is stated:

A publication may clearly be defamatory as to somebody, and yet on its face make no reference to the individual plaintiff * * * He need not, of course, be named and the reference may be an indirect one; and it is not necessary that every listener understand it, so long as there are some who reasonably do.

It is clear from the summary judgment evidence that a number of persons including some of Poe's acquaintances, friends, students and school officials would have deduced that the publication referred to Poe and actually did so.

Under the holding in *Gertz* and *Foster*, a negligence standard was applicable in this libel case. The matter of negligence is ordinarily a question of fact. Defendant's summary judgment evidence does not particularly address the matter of negligence.

There are conflicts in evidence pertaining to the thoroughness of the newspaper's investigation and other circumstances in evidence placing some question on the accuracy or credibility of some of the matters alleged. In any event, the summary judgment evidence does not establish the absence of negligence as matter of law.[5]

While defendant contends plaintiff suffered no damages, or, at the best, nominal damages, plaintiff's pleadings allege various elements of damages including damage to reputation, suspension as a teacher for a period of time, inability to get and hold a job, extreme trauma and interference with his employment contract. The summary judgment evidence at least raises disputed fact issues as to some elements of damages.

The evidence is sufficient to present a fact issue as to some elements of damages and the summary judgment evidence does not establish the total absence of any damages as a matter of law.

■ Defendant failed to meet its summary judgment burden of establishing: (a) that Poe was a public official; (b) the truth of the statements contained in the publication; (c) the absence of any malice; (d) that the publication was privileged; (e) the absence of any negligence; and (f) the total absence of any damages.

We have concluded that because of the errors hereinbefore enumerated and discussed, this case must be reversed.

The judgment is reversed, and the case remanded to the trial court for a new trial.

## OPINION

KLINGEMAN, Justice.

Defendant San Antonio Express-News Corporation's motion for rehearing is over-

---

5. Defendant makes some contention that plaintiff did not plead negligence. While plaintiff's pleadings in this connection are somewhat general, it is apparent from the pleadings as a whole that acts of negligence are alleged, including the allegations that defendant recklessly, willfully, and with disregard of the rights of plaintiff and without any semblance of proper and sufficient investigation printed and published in its newspaper the defamatory article which is the basis of this suit; that a reasonable and proper investigation made by defendant would have revealed the falsity of such statements; that a fair and reasonable investigation was never made to determine whether such statements were true or false; and, that such article was published and circulated with recklessness and carelessness and with a wanton disregard of the rights of plaintiff.

ruled. Rupert J. Murdoch's motion for rehearing is granted, and our opinion of September 19, 1979, is changed by deleting Footnote # 1 and substituting in lieu thereof a new Footnote # 1, as follows:

1. Prior to the trial Rupert J. Murdoch made a special appearance under Rule 120(a) of the Texas Rules of Civil Procedure, contending that he should be dismissed for want of jurisdiction. Murdoch's pleading for such motion is verified and asserts that he is not a resident of Texas, is not engaged in business in Texas, and has committed no tort in Texas. On March 20, 1978, the trial court entered judgment reciting that after hearing the evidence and argument of counsel it is of the opinion that Murdoch's plea to the jurisdiction is good and should be granted, and Murdoch is dismissed as a party defendant. Plaintiff's Point of Error # 13 asserts that the trial court erred in holding that Texas courts have no jurisdiction over Rupert J. Murdoch. Plaintiff made no request for findings of fact and brought forward no statement of facts with regard to the hearing on Murdoch's motion. Under such circumstances we must assume that sufficient evidence was introduced to support the ruling of the trial court. *See Commercial Credit Corporation v. Smith*, 143 Tex. 612, 187 S.W.2d 363–65 (1945); *Zemke v. Stevens*, 494 S.W.2d 227 (Tex.Civ.App.—Eastland 1973, no writ); *Rogers v. Thompson*, 554 S.W.2d 803 (Tex.Civ.App.—San Antonio 1977, no writ). Plaintiff's Point of Error # 13 is overruled. The trial court's judgment dismissing Murdoch as a party defendant is affirmed. All reference in this opinion to "defendant" means San Antonio Express-News Corporation and does not include or refer to Rupert J. Murdoch.

In all other things, our opinion of September 19, 1979, is unchanged and remains as originally written.